434 A.2d 1243

Hermine S. MITCHELL and Sidney W. Frick, Executors of the Estate of Herman Strickler, deceased and Pauline Strickler

v.

UNITED ELEVATOR COMPANY, INC., Westinghouse Electric Company, and Pennsylvania Real Estate Investment Trust.

Appeal of UNITED ELEVATOR COMPANY INC.
(Two Cases).

Appeal of WESTINGHOUSE ELECTRIC COMPANY.

Superior Court of Pennsylvania.

Argued May 26, 1981.

Filed Aug. 28, 1981.

478

George D. Sheehan, Jr., Philadelphia, for appellants (at Nos. 2087, 2088) and for appellees (at No. 2212).

William C. McGovern, Philadelphia, for appellants (at No. 2212) and for appellees (at Nos. 2087, 2088).

Charles F. Voltz, Jr., Philadelphia, for appellees.

Before WICKERSHAM, McEWEN and WIEAND, JJ.

WICKERSHAM, Judge:

This case arises from injuries sustained by plaintiff Herman Strickler (hereinafter "plaintiff") when he fell on June 20, 1974 while entering an elevator on the sixth floor of the apartment building where he and his wife resided at 5400 Wissahickon Avenue, Philadelphia. At the time of the incident, plaintiff was 93 years old and had failing eyesight. He had peripheral vision, however, and was able to walk by himself with the help of a cane. Unknown to plaintiff, when he stepped into the elevator car, the floor was ten to twelve inches below the level of the building floor. As a result, plaintiff fell and suffered serious injuries including a fractured hip, which necessitated removal of the femoral head and replacement with a prosthetic device. Plaintiff died of causes unrelated to the accident in February, 1976 and was substituted as a party herein by his executors, Hermine Mitchell and Sidney Frick. Mrs. Strickler, who

was 84 at the time of the accident, also pursued a claim herein for loss of consortium.

Named as defendants were Pennsylvania Real Estate Investment Trust (hereinafter PREIT), the owner of the building; Westinghouse Electric Corporation (hereinafter Westinghouse), which had designed the elevator in question and had installed it in 1950; and United Elevator Company (hereinafter "United"), which held the contract for maintenance of the elevator, and which, pursuant to that contract, had a representative working on the subject premises at the time of the accident. Defendant United also filed a cross claim against co-defendant Westinghouse. For reasons to be discussed below, a default judgment was entered in favor of plaintiff and against United in January 1976, thereby limiting the trial as to that defendant to the issue of assessment of damages. Plaintiff's case against Westinghouse was premised on alternative theories of negligence, strict liability and breach of warranty. The latter two theories were also alleged in United's crossclaim.

The trial herein was conducted before the Honorable John J. McDevitt 3rd and a jury from September 11 to 21, 1979. At the conclusion of the plaintiff's case, a non-suit was entered in favor of defendant PREIT. The jury thereafter answered interrogatories which mandated a verdict in favor of plaintiff's estate in the amount of $102,529 against both United and Westinghouse and in favor of plaintiff's wife against these same defendants in the amount of $25,000. The jury found in favor of Westinghouse with respect to the doctrine of strict liability and breach of warranty, but imposed liability by finding that Westinghouse had negligently designed the elevator. Defendants United and Westinghouse thereafter filed timely post-trial motions. The post-trial motions of both defendants were denied in an exhaustive and well-considered opinion of Judge McDevitt filed July 31, 1980. Following entry of judgment on the verdict, the present appeals were taken.

I. *Appeal of United Elevator Company, Inc.*

United's first argument, and the one it pursues most vigorously, is that the trial court erred in denying its motion to strike the default judgment which had first been entered against it on January 19, 1976. This issue has already been reviewed by this court in a decision rendered on July 12, 1978. *Strickler v. United Elevator Co., Inc.*, 257 Pa.Super. 542, 391 A.2d 614 (1978).

As outlined in that opinion, authored by Judge Hoffman, plaintiffs, on October 20, 1975, served interrogatories on defendants United, Westinghouse and PREIT and directed that they be answered within twenty days. When no answers were forthcoming, plaintiff on December 5, 1975 notified all three defendants of his intention to initiate sanction procedures pursuant to Philadelphia Local Civil Rule 4005* (d) (later renumbered 145). Attached to the letter were copies of (1) a notice of intention to file a praecipe for an interlocutory order, (2) a certification of service of the notice of intention to file a praecipe and an interlocutory order, (3) a praecipe for an interlocutory order, and (4) an interlocutory order. On December 16, 1975, the prothonotary entered an interlocutory order directing United, Westinghouse, and PREIT to file answers to the interrogatories within 30 days. Westinghouse and plaintiff then stipulated, on December 29, 1975, that the interlocutory period for Westinghouse would be extended to February 2, 1976.

When neither United nor PREIT filed answers by the deadline, plaintiff, on January 19, 1976, filed a supplemental praecipe directing the prothonotary to enter a final order of judgment by default. On the same date, the prothonotary entered such a judgment as to liability against United and PREIT.

On January 20, 1976, PREIT filed answers to interrogatories, and, on February 27, 1976, both PREIT and United filed petitions to strike and/or open the judgment. In its petition, United asserted that plaintiff failed to notify it properly under Local Rule 4005* (d) and that this local rule is in direct violation of Pa.R.C.P. No. 4019, thereby render-

ing the judgment void. On May 20, 1976, the court per Judge Lagakos, dismissed both petitions. United and PREIT then filed motions requesting reargument before Judge Lagakos. On June 17, 1976, PREIT also filed an appeal to the Superior Court. United, however, did not pursue that remedy. On November 18, 1976, Judge Lagakos denied the motions for reargument, after which United filed an appeal, on November 30, 1976, from both the May 20 and November 18 orders. On December 15, 1976, our court quashed United's appeal as untimely. No petition for allocatur was subsequently filed.

United's next tactic was the filing, on January 20, 1977, of a petition and rule to show cause why the court's orders of May 20 and November 18, 1976 should not be reconsidered. This action was taken after argument in the superior court on PREIT's appeal from Judge Lagakos' denial of the motion to strike. We subsequently upheld PREIT's appeal on the issue that timely notification had not been given pursuant to the local rule. *Strickler v. United Elevator Co. Inc.*, (Appeal of Pennsylvania Real Estate Investment Trust), 248 Pa.Super. 258, 375 A.2d 86 (1977) (hereinafter *"Strickler I"*). In light of that decision, Judge Greenberg, on August 3, 1977, entered an order granting United's petition for reconsideration. Plaintiff then pursued an appeal from Judge Greenberg's ruling, resulting in the aforementioned opinion by Judge Hoffman on July 12, 1978 (hereinafter *"Strickler II"*).

Despite that opinion, United again moved on the eve of trial that the judgment against it be stricken. Judge McDevitt denied that motion, which is now cited as ground for a new trial. The thrust of United's argument is that the judgment entered by the prothonotary in January 1976 was void by virtue of the superior court's holding in *Gonzales v. Procaccio Brothers Trucking Company*, 268 Pa.Super. 245, 407 A.2d 1338 (1979). The court therein ruled that Local Rule 145 was in conflict with Pa.R.C.P. No. 4019 and was therefore invalid, a position which United had earlier raised in its own appeal. Given the *Gonzales* holding, United goes

on to argue that a void judgment may be stricken at any time, regardless of laches. Since there is no dispute that the judgment herein was premised on defective procedure, both with respect to the failure to give proper notice (the holding in *Strickler I*) and with respect to the absence of a prior judicial determination (the holding in *Gonzales*). United strongly contends that it is now incumbent on the court to grant the relief requested.

■ However, United fails to overcome the problem which *Strickler II* recognized when United attempted to invoke the holding in *Strickler I*, i. e., the issue of waiver. As stated by Judge Hoffman in *Strickler II*:

> Appellee argues that the judgment is void and, therefore, can be attacked at any time. It is true that laches does not run against a void judgment, and, that such a judgment must be stricken without regard to passage of time. (citations omitted) However, in each case cited, although there was a lapse of time between the entry of the judgment and the party's motion to strike, the petition to strike was the *first* time that any party attacked the judgment. No case holds that a party may bring successive motions to strike before different courts until he is victorious. In the instant case, appellee filed a motion to strike in a court with jurisdiction over both the subject matter and the parties. In the motion, appellee argued that the judgment was void because of the conflict between Philadelphia Local Rule 4005*(d) and Pa.R.Civ.P. 4019. The court refused to strike the judgment as void. This refusal constituted a final, appealable order. Appellee did not file an appeal within 30 days of the judgment. Having failed to preserve his contentions for appellate review, appellee is now bound by the prior decision.

*Strickler v. United Elevator Co., Inc., supra*, 257 Pa.Super. at 549–50, 391 A.2d at 618. (footnote omitted).

■ We rely on that reasoning for purposes of deciding the present case. While *Strickler II* did not go to the merits of the question later decided in *Gonzales*, it is clear that the doctrine of waiver, as articulated in *Strickler II* to prevent a

reconsideration on the basis of *Strickler I*, should also apply to the present attempt at reconsideration on the basis of *Gonzales.*

Our court has long recognized that any coherent system of justice must be grounded by the principle of finality. The doctrine of waiver expresses that principle and prevents intolerable disruptions to the orderly disposition of cases. In *Strickler II*, the court stated:

> Pennsylvania case law is clear that a party may waive its right to present its contentions in court. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Waiver frequently occurs when a litigant fails to follow established and approved methods of raising allegations of error in the lower court or in appellate courts. For example, waiver occurs: when counsel fails to object to the charge of the court, *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977); when counsel fails to file a timely Rule 1100 motion. *Commonwealth v. Byrd*, 250 Pa.Super. 250, 378 A.2d 921 (1977); when counsel fails to raise a defense in the lower court, *Policino v. Ehrlich*, 478 Pa. 5, 385 A.2d 968 (1978); and when counsel fails to raise an issue on appeal, *Commonwealth v. Romberger*, 474 Pa. 190, 378 A.2d 283 (1977). Moreover, if a disappointed litigant fails to raise an issue on direct appeal in a court of last resort, an appellate court may invoke the waiver doctrine to preclude collateral attack, *Commonwealth v. Romberger*, supra; *Commonwealth v. Gilmore*, 464 Pa. 464, 347 A.2d 305 (1975). Even errors of constitutional dimension may be waived. *Commonwealth v. Romberger*, supra.

*Strickler v. United Elevator Co., Inc., supra*, 257 Pa.Super. at 548–49, 391 A.2d at 617.

United's present argument represents a challenge to the principle of finality and the concomitant doctrine of waiver. If accepted, United's position would mandate the striking of untold numbers of judgments wherein no appeal was ever taken. Of course, the implications herein go beyond those

cases determined under former Local Rule 145. A ruling for United would mean that any defeated litigant could cite a subsequent change in the law to have a judgment stricken. We are opposed to any such undermining of the orderly appellate process.

Were this court to adopt United's position, it would be inconsistent with its reasoning articulated in *Tice v. Nationwide*, 11 Pa.Super. 220, 425 A.2d 782 (1981) (*Tice II*). United misconstrues the holding of *Tice II*, which holds (1) that a default judgment must be stricken *if* an appeal was pending when *Gonzales* was handed down and, (2) that waiver would not bar the application of *Gonzales* even though the invalidity of Rule 145 was not argued in the lower court. Instantly, not only was there no appeal pending, it had already been decided in *Strickler II* and, *a priori*, waiver would apply because United had argued the invalidity of Rule 145 in the lower court and had waived its appellate rights by not filing a timely appeal. The concurring opinion of Judge Spaeth in *Tice II* clearly anticipated the argument which United now advances:

> Second, suppose a motion to strike a judgment entered under Rule 145, denial of the motion, and either no appeal or an unsuccessful appeal, all before *Gonzales*. In the interests of finality, the judgment should not be stricken on the basis of *Gonzales*. In *Washington v. Liberi*, 273 Pa.Super. 48, 416 A.2d 1082 (1979), we refused to apply *Gonzales* retroactively in a case where a motion to strike, not raising the invalidity of Rule 145, had been made in 1977 and denial of the motion was not appealed. (The appellant had unsuccessfully petitioned the lower court for reconsideration of its denial, again without raising the invalidity issue.) I am not persuaded to a contrary result by broad language in older cases about an appellate court *sua sponte* striking a "void" judgment.

*Id.*, 284 Pa.Super. at 237, 425 A.2d at 791.

We affirm the action of the trial court in denying United's motion to strike the default judgment entered against it on January 19, 1976 for the reasons set forth herein. We have

reviewed the remaining statements of issues presented by United and find them to be without merit and to have been adequately and comprehensively discussed and ruled upon by the trial court in its opinion filed July 31, 1980.

## II. *Appeal of Westinghouse Electric Company*

The defendant Westinghouse built and installed the elevator in this case while the apartment building was under construction in 1950. The plaintiff's injury occurred in 1974 and suit was commenced in June, 1975. Under the provisions of the Act of December 22, 1965, P.L. 1183, 12 P.S. § 65.1 et seq., substantially reenacted as, 42 Pa.C.S. § 5536, the plaintiff's and United's cross-claim against Westinghouse is barred. Section 5536, 42 Pa.C.S. provides:

(a) General Rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

.    .    .    .    .

(3) Injury to the person or for wrongful death arising out of any such deficiency.

It is Westinghouse's position that the above mentioned statute is a statute of repose that abolished any cause of action against designers and contractors of real property improvements 12 years after the completion of the improvement, and as such, remains available to the defendant, Westinghouse, as a defense without the necessity of being pleaded in new matter.

The above statute does not change the statute of limitations for personal injuries in Pennsylvania and is not merely a bar to the plaintiff's right to seek a remedy against the designer of the real property improvements *Misitis v. Steel City Piping Co.*, 441 Pa. 339, 272 A.2d 883 (1971). Rather, the Act of 1965 completely abolished any cause of action that may have existed at common law against such designer,

at a point 12 years after the completion of such improvement. *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715 (1978). In *Freezer Storage*, the supreme court considered the constitutionality of this statute and determined that the legislature had intended to reject a cause of action that had been permitted by the courts prior to the Act of 1965. In fact, the court determined that the legislature had a right in this particular case, to abolish the right of action which exists at common law without substituting some other means of redress. Further, the supreme court in *Misitis* discussed the effect of the Act of 1965, and stated:

> The Act of 1965 did not change the two-year period. Instead the Act *completely eliminates* all causes of action arising out of the negligence in construction or design which occurred more than twelve years before the accident. After the effective date of the statute, in a case like this, even if a would-be plaintiff attempted to file a suit immediately after the accident while on his way to the hospital, his haste would be to no avail. *He would have no cause of action.* (Emphasis added).

*Misitis v. Steel City Piping Co., supra,* 441 Pa. at 343, 272 A.2d at 885.

■ Obviously, the supreme court has determined that no cause of action exists against the designer or contractor of real property improvements 12 years after completion of such improvement. The language of the supreme court then, in the above cases, clearly indicated that the Act of 1965, does not merely bar a litigant's right to a remedy, as a statute of limitations does, but the Act completely abolishes and eliminates the cause of action itself. By eliminating a cause of action, the Act of 1965 is a statute of repose and as such it is properly raised in a Motion for Nonsuit, Directed Verdict, or Judgment N.O.V.

In *First Pool Gas Coal Co. v. Wheeler Coal Co., et al.,* 301 Pa. 485, 152 A. 685 (1930), the supreme court explained the distinction between the statute of limitations in actions personal, and a statute of repose. The court there was

referring to the Act of April 22, 1865, P.L. 533, 12 P.S. Section 838, a limitation respecting actions to enforce trusts as to realty. The court went on to explain that such limitation on actions does not have to pleaded and stated as follows:

> ... this Rule (Pleading a Statute of Limitations), however, refers to the statute of limitations of actions personal, and is inapplicable to the Act of 1865. In the former case the statute merely applies to the remedy, the claim remains and may be revised by a new promise; while in the latter there is no right of action unless served in accordance with the provisions of the statute ... the Act of 1965 ... is a statute of repose which need not be specifically pleaded.

*Id.*, 301 Pa. at 489, 152 A. at 687.

We find that because the Act of 1965 is a non-waivable statute, abolishing and destroying the cause of action against any person lawfully performing or furnishing the design, planning, supervision or observation of construction or construction of real property improvements, such defense is not waived by the failure to plead the statute as a statute of limitations defense pursuant to Pa.R.C.P. No. 1030.

The lower court's opinion dismissing post-trial motions implicitly recognizes this:

> In pursuing the issue at this point, Westinghouse maintains that the statute is not merely a bar to recovery but rather completely abolishes any cause of action against a designer of improvements to real property after the expiration of 12 years following completion of the improvement. The cases of *Misitis v. Steel City Piping Co.*, 441 Pa. 339 [272 A.2d 883] (1971) and *Freezer Storage Inc. v. Armstrong Cork*, 476 Pa. 270, 382 A.2d 715 (1978) certainly support that conclusion. Those authorities also indicate that a statute of repose can be raised at any point. (citations omitted).

Lower court op. at 26.

The lower court ruled, however, that Westinghouse could not avail itself of the bar against liability provided by the

statute by finding that the construction of the elevator system in this apartment building by Westinghouse was not the construction of an improvement to real estate. The court ruled that it was rather like supplying a ready-made item that was merely incorporated into the building. "Westinghouse simply supplied and installed the necessary elements for the elevator system as part of the overall construction of the complex." Lower court op. at 27.

■ We do not agree with the lower court's construction of the provisions of 42 Pa.C.S. § 5536 and accordingly we reverse as to appellant Westinghouse Electric Company. We hold that the construction of the elevator in question in 1950 was the "construction of any improvement to real property."

■ The lower court seems to be likening the building of an elevator system with all its myriad components, motors, cables, wiring and machinery to uncrating and plugging in a television set. The fact that the basic design of the elevator may be identical in different buildings does not render the elevator system any less an improvement to real estate. The term improvement is defined in Black's Law Dictionary:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure . . . .

Black's Law Dictionary 682 (5th ed. 1979).

Certainly, the elevator system in this case is as much an improvement to real property as was the insulation material in the ceiling of the warehouse in the *Freezer Storage Inc. v. Armstrong Cork* case cited above.

Judgment against United affirmed [1] at No. 2087 Philadelphia 1980.

1. United filed a timely appeal from the judgment entered on the verdict at No. 4506 May Term 1975, Docket No. 2087 Philadelphia 1980, which appeal has raised the substantive issues that we have

Appeal of United Elevator is quashed at No. 2088 Phila-delphia 1980.

Judgment against Westinghouse reversed at No. 2212 Philadelphia 1980.

decided. In addition to that appeal, United also took an appeal to this court from the Order of the Honorable John J. McDevitt, III entered July 31, 1980 at No. 4506 May Term 1975, docketed in this court to No. 2088 Philadelphia, 1980. The Order of July 31, 1980 entered by the court denied motions by United to strike judgment, for a judgment n. o. v. or for a new trial. Such an order does not constitute an appealable order. Pa.R.A.P. 301(c). *Slagter v. Mix*, 441 Pa. 272, 272 A.2d 885 (1971). Accordingly, the appeal filed at No. 2988 Philadelphia 1980 is quashed.