**Jose VASQUEZ and Maria Vasquez**

v.

**WHITING CORPORATION.**

Civ. A. No. 86–3961.

United States District Court, E.D. Pennsylvania.

May 5, 1987.

Joseph Lurie, Richard M. Jurewicz, Philadelphia, Pa., for plaintiffs.

Harry A. Short Jr., Philadelphia, Pa., for Whiting Corp.

Jonathan D. Herbst, Richard A. Kraemer, Philadelphia, Pa., for Day and Zimmerman, Inc.

### MEMORANDUM OPINION
CAHN, District Judge.

### FACTS

On December 26, 1985, plaintiff, Jose Vasquez, slipped and fell from an overhead

crane at his place of employment, Birdsboro Corporation, and suffered various physical injuries. Vasquez and his wife, Maria, later brought this diversity action against Whiting Corporation ("Whiting"), the successor-in-interest to the manufacturer of the crane. Plaintiffs base their suit upon theories of negligence, strict liability, and breach of warranty.

The crane at issue in this case is an "overhead 25–ton/aux 10–ton crane" that transports and carries materials of unspecified sizes, weights and dimensions. Whiting Corporation, an Illinois corporation ("Whiting Illinois") and a predecessor-in-interest to defendant Whiting,[1] manufactured the crane in 1941 and sold it that same year to Day and Zimmerman, Inc. ("Day and Zimmerman"). Employees of Day and Zimmerman apparently installed the crane at Birdsboro Steel Foundry and Machine Company.

Defendant Whiting has moved for summary judgment, arguing that Pennsylvania's twelve-year statute of repose, 42 Pa. Cons.Stat.Ann. § 5536 (Purdon 1981), bars this action. Because I conclude that the Pennsylvania Supreme Court, were it to face this issue, would decide that the Pennsylvania statute of repose does not bar an action against a manufacturer who plays no role in the installation of a product, I will deny defendant's motion.

## DISCUSSION

### I. 42 Pa.Cons.Stat.Ann. § 5536.

The Pennsylvania Statute of Repose provides in pertinent part:

(a) *General rule*—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

.    .    .    .    .

(3) Injury to the person or for wrongful death arising out of any such deficiency.

The crux of defendant's argument is that plaintiffs' claims are barred because defendant's predecessor-in-interest designed, manufactured, fabricated and sold the crane, which eventually became an improvement to real property. *See* Motion of Whiting Corporation for Summary Judgment at 2.

There is no question that the crane was manufactured and installed more than 12 years ago. Thus, the sole remaining issues are: (1) whether the crane constitutes an "improvement to real property" as that phrase is used in the statute of repose; and (2) whether defendant Whiting is within the class of persons protected by the statute.

### II. Applicable Law

A federal court exercising diversity jurisdiction must apply the substantive law of the state in which the court sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). State law includes authoritative pronouncements by the highest court of the state. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). Thus, had the Supreme Court of Pennsylvania decided the issue at bar, I would be bound by that court's pronouncement.

In the absence of such a decision—as here—I must predict how the Pennsylvania Supreme Court would decide this issue.

---

**1.** Whiting is defending this suit pursuant to its assumption of certain liabilities of Whiting Illinois. Defendant Whiting, through its predecessor, GASK Corporation, purchased assets and certain liabilities of the Engineered Products Group of Whiting Illinois. Whiting Illinois, through its Engineered Products Group, allegedly designed, manufactured, fabricated and sold the piece of equipment known as an "Overhead 25–ton/aux 10–ton crane, serial number 4979" in 1941. According to defendant Whiting, nineteen similar cranes were manufactured by Whiting Illinois.

*Id.* at 465, 87 S.Ct. at 1782. *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985). In arriving at my decision, I "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McGowan,* 759 F.2d at 291 [quoting *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.1980) ]. Decisions of the state's intermediate appellate courts are "presumptive evidence, rather than an absolute pronouncement, of state law." *National Surety Corp. v. Midland Bank,* 551 F.2d 21, 30 (3d Cir. 1977). Thus, while I may not ignore the decisions of the Pennsylvania Superior Court, I may reach a contrary result if "other persuasive data" lead me to predict that the Pennsylvania Supreme Court would hold otherwise. *See id.* at 30 (footnote omitted).

The Pennsylvania Superior Court has construed the statute of repose and its predecessor statute, Act of December 22, 1965, P.L. 1183, No. 469, §§ 1–5 (repealed), and the law on this matter appears to be settled in that court in favor of the defendant. *See, e.g., Goodrich v. Luzerne Apparel Manufacturing Corp.,* 356 Pa.Super. 148, 514 A.2d 188 (1986). Accordingly, unless I determine that "other persuasive data" mandate a contrary decision, *see National Surety Corp.,* 551 F.2d at 30, I must hold that the statute of repose bars plaintiffs' claims against defendant Whiting.

In a case relatively analogous to that at bar, the Superior Court held that the statute of repose barred claims against a manufacturer of an elevator system[2] because the system was an improvement to real property. *See Mitchell v. United Elevator Co.,* 290 Pa.Super. 476, 488, 434 A.2d 1243, 1249 (1981). The trial court had held that the elevator manufacturer could not avail itself of the statute's protection because the defendant had "supplied a ready-made item that was merely incorporated into the building." *Id.* at 488, 434 A.2d at 1249. The Superior Court reversed, quoting the Black's Law Dictionary definition of "improvement." The court did not, however, explicitly decide whether the defendant was within the class of persons protected by the statute.

In *Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 489 A.2d 262 (1985), the court held that "a skydome is an improvement to real property within the meaning of Section 5536" and that the manufacturer of the skydome is protected under the act. *Id.* at 487, 489 A.2d at 266. The plaintiffs in that case argued that the statute protects a manufacturer of an improvement to real property only when the manufacturer "customizes" the improvement and assists in its installation. *Id.* at 486, 489 A.2d at 265. The Superior Court explicitly rejected plaintiffs' argument, noting that the statute should be construed liberally. *Id.* at 486, 489 A.2d at 265 [quoting *Leach v. Philadelphia Savings Fund Society,* 234 Pa.Super. 486, 340 A.2d 491 (1975) ].

## III. Statutory Language and Background

### A. Text

■ Statutory interpretation requires, first and foremost, an analysis of the text of the statute at issue. The Pennsylvania statute of repose protects only persons who perform or furnish "the design, planning, supervision or observation of construction, or construction of any improvement to real property." Defendant Whiting argues that Whiting Illinois "designed, manufactured, fabricated and sold" an improvement to real property. I disagree. The crane was not an "improvement to real property" when Whiting Illinois fabricated and sold it. Thus, under the plain language of the statute, defendant Whiting may not claim statutory protection. *See Kovach v. The Crane Company,* No. 82–0530, slip op. at 18 (M.D.Pa. May 18, 1983).

---

2. The defendant manufacturer also installed the elevator system, but it is unclear whether that fact affected the court's analysis. *Cf. Gnall v. Illinois Water Treatment Co.,* 640 F.Supp. 815,

819 n. 7 (M.D.Pa.1986) ("Our reading of *Mitchell* does not persuade us that the *Mitchell* Court based its decision on what *Kovach* terms the 'builder/supplier distinction.'").

Other courts, however, have construed the statutory language differently, *see, e.g., Luzadder v. Despatch Oven Co.,* 651 F.Supp. 239, (W.D.Pa.1986), and have held that a manufacturer whose product *later* becomes an improvement to real property may be insulated from liability. Although the statutory language is sufficiently clear to provide a basis for my decision, I need not rest my decision upon this single reed because the legislative history and policy underpinnings of the statute support my interpretation of the statutory text.

## B. Legislative History

The present statute of repose became effective in 1978 and is substantially a re-enactment of its predecessor statute. Like similar legislation in a majority of states, the statute was enacted in the 1960s as a result of the lobbying efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors. *See* McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am.U.L.Rev. 579, 587 (1981); Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action,* 18 Cath.U.L.Rev. 361, 365 (1969). Although the legislative history of the statute is not conclusive, there is at least some evidence suggesting that the legislature's intent was to protect only architects, engineers and contractors. *See* Legis. J.—House 2243 (1965).[3] There is no legislative history, however, that suggests the statute of repose would bar suits against manufacturers.

Although this legislative history is far from dispositive, *cf. Kovach v. The Crane Company,* No. 82–0530, slip op. at 15 (M.D.Pa. May 18, 1983) [Available on WESTLAW DCT database] (court finds that manufacturer of boiler is not within class of persons protected by statute; legislative history of predecessor statute is "modest" but "somewhat illuminating"), I find that it is a factor I should consider in attempting to predict how the Pennsylvania Supreme Court would decide this issue. *But see, e.g., Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. at 487, 489 A.2d at 265–66; *Leach v. Philadelphia Savings Fund Society,* 234 Pa.Super. 486, 490, 340 A.2d 491, 493 (1975) (without mentioning legislative history, each panel decides statute not restricted to architects, engineers, and contractors).

## C. Policy Considerations

The Pennsylvania Legislature clearly has made a policy choice to insulate from liability certain classes of persons. The Legislature has not decided to protect *all* parties from suit once twelve years have elapsed. As the Pennsylvania Supreme Court has noted, "[t]he Legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers." *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 277, 382 A.2d 715, 719 (1978) (dicta). The court continued:

> Suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and contruction only in limited ways—actual use in the years following construction is their only real test....

*Id.* at 277, 382 A.2d at 719. Documents submitted to this court show that Whiting Illinois manufactured nineteen cranes similar to the crane at issue in this case, *see supra* fn. 1. The Whiting Corporation cat-

---

**3.** The Journal attributes to the Speaker remarks made in connection with the Bill. It appears from the context, however, that one Mr. Mebus actually made the remarks. Mr. Mebus stated that the bill provides "for protection from accusations of *professional* failure long after his engagement is complete." Legis. J.—House at 2243 (emphasis added). Mr. Mebus also said that "[t]oday a retired *architect, engineer or contractor,* who traded as a sole proprietor, is forev-

er liable for his previous acts...." *Id.* at 2244 (emphasis added).

The understanding in the Senate appears to have been the same. Mr. Sesler, who voted against the bill, stated: "I have never been under the impression that undue harassment has occurred to contractors, architects or designers, so as to necessitate this type of legislation...." Legis. J.—Senate 1015 (1965).

alogue reinforces the notion that Whiting assures its purchasers a high-quality product: "Every step that goes into engineering, designing and estimating has been subjected to review with an emphasis on quality control." [4] *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Answer to Summary Judgment Motion of Whiting Corporation, Exhibit "A" at 5 "f." Thus, the case at bar constitutes the type of situation contemplated by the *Freezer* court.

There is additional evidence in the legislative history of the statute of repose suggesting policy reasons for the legislature's decision to distinguish architects, engineers, and contractors from manufacturers of products. The former group generally consists of individuals who, but for the statute, might be liable for accidents occurring long after their retirement, *see supra* fn. 3; manufacturers and suppliers of products, however, generally are corporations that may have an indefinite lifespan and a great ability to spread and insure against risks.

A further policy rationale suggests that the statute of repose should not insulate from liability mere manufacturers or suppliers of products.[5] The policy underlying § 402A of the *Restatement (Second) of Torts* (1965), which has been adopted as the law of Pennsylvania, *see Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), is to protect and compensate victims of defective products while forcing suppliers of such products to bear the risk of loss.[6] *See Azzarello v. Black Brothers Co.*, 480 Pa. 547, 553, 391 A.2d 1020, 1023 (1978). These policies would be undermined if manufacturers of products were able to claim that the statute of repose relieves them of liability merely because their products have somehow become "improvements to realty." As one commentator has noted, "[s]ince an item can become affixed to real property, manufacturers may have *a convenient bar* to claims depending on whether the defectively manufactured product is deemed to be a fixture." Comment, *Defective Design —Wisconsin's Limitation of Action Statute for Architects, Contractors and Others Involved in Design and Improvements to Real Property*, 63 Marq.L.Rev. 87, 111 (1979) (emphasis added). *But see Luzadder v. Despatch Oven Co.*, 651 F.Supp. at 244 ("the language of § 5536 is broad enough to encompass a particular 'product' under § 402A which may also be an 'improvement to real property.'"). I cannot rule that the applicability of the statute of repose depends upon such a gossamer matter as whether a product fortuitously has become affixed to real property.[7]

### IV. Conclusion

In sum, the language and legislative history of, and the policies underlying, the

---

4. Although it is true that Whiting is merely the successor-in-interest to Whiting Illinois, there is information in the record suggesting that Whiting Illinois underwent a corporate reorganization and that Whiting is the result of the reorganization. Indeed, Whiting links its production to that of its predecessor: "Whiting Corporation has been a leader in supplying cranes to the foundry and mini-mill industries *for almost a century.*" *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Answer to Summary Judgment Motion of Whiting Corporation, Exhibit "A" at 9 (emphasis added).

5. That the Legislature intended to differentiate between suppliers of services and manufacturers or suppliers of products can be gleaned from the Legislature's failure to enact a product liability statute of repose. In contrast, sixteen states that have passed statutes of repose for architects, engineers and contractors also have enacted product liability statutes of repose. *See McGovern, supra,* at 580 n. 3.

6. Although it is true that the Legislature enacted the statute of repose prior to the Supreme Court's decision of *Webb v. Zern,* I do not find this fact dispositive. The Pennsylvania Supreme Court has not carved out an exception to § 402A, and I shall not be so presumptuous as to do so. *See infra* fn. 8.

7. Under the defendant's interpretation of the statute, a manufacturer of, for example, a defective above-ground swimming pool could be held liable beyond the twelve year period of limitations only if the swimming pool had not become an "improvement to real property." Yet, defendant would argue, the same manufacturer would be immune from liability if a third party attached the swimming pool to real property so as to make the pool an "improvement to real property."

Pennsylvania statute of repose comprise "persuasive data" that compel me to take a position contrary to that of the Pennsylvania Superior Court.[8] Accordingly, I hold that the Pennsylvania statute of repose does not bar an action against a manufacturer whose product has become an "improvement to real property." [9]

---

[8.] Moreover, defendant has failed to bring to my attention a single factor that counsels in favor of extension of the statute of repose. Although Pennsylvania statutes should be construed liberally "to effect their objects and to promote justice," *see* 1 Pa.Cons.Stat.Ann. § 1928(c) (Purdons Supp.1986), it is equally true that changes in "basic tort law" should emanate from the Pennsylvania Supreme Court, and not the Superior Court. *See Vargus v. Pitman Manufacturing Co.,* 675 F.2d 73, 76 (3d Cir.1982). I find that an extension of the statute of repose, as advocated by defendant Whiting, would contravene the Third Circuit's instructions, but my decision does not run afoul of the statutory presumption; rather, I have construed the statute in light of its legislative history and policy underpinnings.

[9.] In so holding, I assume without deciding that the crane at issue in this case has become such an improvement. In addition, I express no opinion as to the proper decision where a manufacturer of a product also installs the product. *Cf. Mitchell v. United Elevator Co.,* 290 Pa.Super. 476, 434 A.2d 1243 (1981).