## Ferricks v. Ryan Homes Inc.

*Daniel M. Berger* and *Thomas B. Rutter,* for plaintiffs.

*Herman C. Kimpel,* for defendant Ryan Homes Inc.

*Thomas W. Corbett Jr.,* for defendant St. Regis Corp.

*Concetta A. Silvaggio,* for defendant Chembond Corp.

*Frederick N. Engler,* for defendant Borden Inc.

*James Mollica Jr.,* for defendant Reichhold Chemicals Inc.

*Daniel B. Winters,* for defendant Potlatch Corp.

JOHNSON, *J.,* October 19, 1989 — Plaintiffs David and Margaret Ferricks, in their own right and on behalf of their minor children, Daryl, Jeffrey, Christine and Richard Ferricks, commenced this action to recover for personal-injury and property damage sustained by way of exposure to urea-formaldahyde vapors "off-gassing" from the building materials of their home.

Asserting, in 12 counts, related claims of negligence, strict liability and product liability, plaintiffs named as defendants the general contractor who constructed the home, as well as several manufacturers of plywood and plywood adhesive; said material alleged to contain the formaldehyde resin in question. Defendants St. Regis Corporation and Potlatch Corporation, plywood manufacturers, denied the presence in their product of unsafe levels of formaldehyde resin or vapors, answering further that said compound, if present, was not a threat to human health and that plaintiffs' exposure thereto had been minimal. All defendants denied negligence, causation and liability in general, but the material facts of the cause of action, as now before this court on motion for summary judgment, remain undisputed.

The home in question was erected by defendant Ryan Homes in 1971, having been prefabricated of plywood manufactured by defendants St. Regis and Potlatch. Plaintiffs purchased the home from its second owners in August 1975, and noticed shortly thereafter an unidentified odor inside followed by ill health effects later diagnosed as related to exposure to formaldehyde vapors. After unsuccessful attempts structurally to rectify the problem, plaintiffs initiated this action on April 3, 1984; almost 13 years after construction of the home was completed.

Several years later following limited discovery, defendant Reichhold moved for summary judgment in April 1987, asserting that plaintiffs' cause of action was extinguished by 42 Pa.C.S. §5536, the "construction projects" statute of repose.[1] Prior to

---

1. The statute of repose, 42 Pa.C.S., provides in pertinent part:
"§5536. *Construction projects* —
"(a) *General rule* — Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of

argument, defendants Ryan Homes, St. Regis, Pot-
latch and Chembond joined in Reichhold's motion
and the same was presented before the Honorable
William L. Standish, *J.* Unwilling at that stage of
litigation, however, to dismiss all joining defendants
under the statute of repose, Judge Standish granted
summary judgment for Ryan Homes alone;[2] deny-
ing summary judgment to all other defendants
without prejudice to refile said motions upon com-
pletion of discovery.[3]

Discovery now having been completed, defendants
Potlatch and St. Regis move the court once more for
summary judgment, contending that the construc-
tion of plaintiffs' home having been completed more
than 12 years past, judicial precedent compels the
entry of summary judgment in their favor, consistent
with the statute of repose, *supra.* Said defendants

construction, or construction of any improvement to real property
must be commenced within 12 years after completion of construction
of such improvement to recover damages for:

"(1) Any deficiency in the design, planning, supervision or obser-
vation of construction or construction of the improvement.

"(2) Injury to property, real or personal, arising out of any such
deficiency.

"(3) Injury to the person or for wrongful death arising out of any
such deficiency.

"(4) Contribution or indemnity for damages sustained on account
of any injury mentioned in paragraph (2) or (3)."

2. Although plaintiffs appealed the dismissal of Ryan Homes as
per notice of appeal filed July 27, 1987, appellate review was never
commenced as plaintiffs voluntarily discontinued their appeal by
praecipe of October 2, 1987.

3. Defendants Borden, Reichhold and Chembond were also dis-
missed from this action pursuant to a subsequent consent order of
court of September 4, 1987. (Standish, *J.*) Ordered in disposition of
an earlier motion for summary judgment of defendant Borden in
which Reichhold and Chembond later joined, these defendants'
dismissal was based not on the statute of repose, but upon plaintiffs'
failure in discovery to establish product identity.

assert jointly that the plywood of which plaintiffs' home was constructed, constitutes of itself an "improvement to real property" within the meaning of the statutory language, while they, as its manufacturers, acted as members of the protected class, performing construction or the design thereof.

Although no appellate case law exists so expansively interpreting the statute of repose, defendants have directed this court's attention to a line of Superior Court precedent whereby liberal construction of said statute has been favored. (See *infra* at 264-5). Defendants further note that one court of jurisdiction coordinate to that of this tribunal has relied thereon to support a position consistent in part with that now taken by defendants. (See memorandum and order of Judge Standish of July 7, 1987).

Although this court, upon the foregoing representations of counsel, granted the motion which underlies plaintiffs' instant appeal, subsequent evaluation of all relevant statutory and judicial authority as well as the legislative history of the statute of repose, and considered rationale of the Supreme Court of Pennsylvania, reveals the improvidence of this court's action and requires that its order granting summary judgment be reversed.

To that end, this court is compelled to discern and evaluate the state of the law which binds the subordinate courts to limited application of the statute.

# I
## *Improvements to Real Property*

Extending its protection to "any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property," the "construction projects" statute of repose is subject

to a two-part analysis for purposes of this action. As the passage of more than 12 years prior to suit on the existing cause of action is undisputed, this court is called to consider first, whether fungible plywood, as the cause of injury, is an "improvement to real property" within the meaning of the statute. Secondly, this court must discern whether defendants, as manufacturers of said plywood, may benefit at law from the statute's protection. Endeavoring to ascertain the intent of the General Assembly, this court must consider independently each criterion, since although interdependent, satisfaction of one does not necessarily establish the other. Cf. *Springman v. Wire Machinery Corp. of America,* 666 F.Supp. 66 (M.D. Pa. 1987).

Addressing the issue of "improvement to real property," various sources of authority have adopted divergent points of view; but despite the liberality of statutory construction exercised, the most basic rationale of each decision supports this court's position that fungible resources as unfinished single components with a multiplicity of purposes, are not of themselves improvements to real property.

The tenor of debate on this issue was established by the Superior Court decision of *Mitchell v. United Elevator Company,* 290 Pa. Super. 476, 434 A.2d 1243 (1981), wherein the court addressed the fabrication and installation of an elevator system in a pre-existing structure. Although the trial court concluded that defendant "Westinghouse simply supplied and installed the necessary elements for the elevator system as a part of the overall construction. . . .," and held that the system was not an improvement to real property, the Superior Court reversed. Relying on the complex and integrated nature of the system, the court established those factors as criteria

for future application of the statute of repose and admonished subordinate courts accordingly, stating:

"The lower court seems to be likening the building of an elevator system with all its myriad components, motors, cables, wiring and machinery to uncrating and plugging in a television set. The fact that the basic design of the elevator may be identical in different buildings does not render the elevator system any less an improvement to real estate." *Mitchell, supra.*

A requirement of integrated complexity thus recognized, the court extended its rationale in the case of *Catanzaro v. Wasco Products Inc.*, 339 Pa. Super. 481, 489 A.2d 262 (1985). Therein, the court likened one finished product, a defective skydome, to another, a window, historically included as a fixture.[4] Reasoning that both should be so recognized, the court concluded that "Pennsylvania courts agree that fixtures are included within the category of 'improvements to real property.'" Although apparently retreating from *Mitchell's* implied requirement of complexity, the court's recognition of the subject skydome as a fixture is logically attributable at least in part to its status as a finished product of singular purpose inherently able to enhance the value of the underlying real property. The same cannot be said, however, of fungible resources of multiple purpose, the statutory classification of which has never been addressed by Pennsylvania's appellate courts. See also, *Goodrich v. Luzerne Apparel Manufacturing Corporation*, 356 Pa. Super. 148, 514 A.2d 188 (1986).

Underscoring the foregoing rationale, the court

---

4. The finished product of a window is to be contrasted with the fungible plate glass of which it is made, much as plaintiffs' home as a completed improvement to real property, may be contrasted with the fungible plywood, of which it was constructed.

adopted in *Mitchell, supra,* a definition of improvement which extends, in its most liberal construction, only to the extent of its application in *Catanzaro;* i.e. to coverage of fixtures and other finished products of inherent value and singular purpose, to be integrated into a structure. Adopting the meaning of "improvement" as expounded by Black's Law Dictionary, 5th ed., 1979, the court defined the same as:

"A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure. . . . " *Mitchell, supra.*

The logic of said definition precludes inclusion thereunder of fungible multiple-purpose building materials such as plywood. As noted in the text thereof, improvement is "a valuable addition . . . amounting to more than mere repairs or replacement." Inclusion of plywood or other fungibles as such "valuable additions" creates internal inconsistency within the definition, inviting arbitrary distinctions between building materials used in original construction, such as the plywood here in question, and those used for "mere repair or replacement." While materials used in original construction might be deemed "improvements," the provisions of the definition as adopted clearly preclude the same treatment for those used in repair. A result which would so reward manufacturers based on the fortuity of inclusion of their product in original construction while denying protection for equally defective materials used thereafter is without logical foundation, and as such, could not reflect

the intention of the legislature. Cf. *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982).

The definition's further language, recognizing "improvement" as an addition to property "costing labor or capital, and intending to advance its value, beauty or utility or to adapt it for new or further purposes," also militates against inclusion thereunder of fungible building materials. Consideration of the purpose of such resources demonstrates that in and of themselves they are merely single components of a greater whole and are recognizable as some form of "improvement" only upon the application of "labor or capital," directed toward the construction of some structure or a fixture thereof. Such construction is the only verifiable manifestation of intention to "enhance [the] value, beauty or utility" of the underlying property. Any contrary finding would serve to advance the absurd result that building materials such as plywood, plate glass, aluminum sheeting or steel girders might be merely stockpiled on a given piece of real estate and be thereby subject to inclusion under the statute of repose, as "improvement[s] to real property."

Accordingly, it is this court's belief that the definition's second sentence acts as a form of limitation, such as to include within its meaning, only buildings and other permanent structures. While the inclusion of windows, skydomes or elevator systems, as discussed, taxes the ordinary meaning of "structure," each is a multiple component fixture and as such is includable within said category. Accord: *Catanzaro v. Wasco Products Inc., supra.* While a completed structure or fixture such as an elevator, window or plaintiffs' home constructed of fungible building materials may be deemed an "improvement to real property," the individual raw materials themselves may never be so recognized.

Logically, no "improvement" of any type exists until, through the application of creative forces, a structure arises, whereupon only the structure itself is an improvement,. bereft of which each fungible component is of no consequence to the value of the underlying property. In most basic terms, the structure as the whole exists as the improvement and is greater than the sum of its fungible parts.

Consideration of the measure's legislative history also supports, inferentially, limitation of the statute of repose, suggesting application only to buildings and their fixtures. Albeit scant, but instructive nonetheless, legislative remarks of record address the statute as a measure of protection for design and construction professionals potentially liable for negligently rendered buildings. Nowhere in debate is any reference made to inclusion as improvement to real property of manufactured raw materials from which said structures are created. In Senate debate opposing the bill, Senator Sesler expounded that: "[I]f a *building* has been designed, planned or constructed negligently, and that negligence is the approximate [sic] cause of injuries, deaths or property damages to an innocent party, then that innocent party should have the right to collect." Legislative Journal — Senate at 1015 (1965). (emphasis supplied)

Considered in conjunction with remarks offered concerning the class of persons to be covered by the act, legislative debate reflects concern with limitation of liability in ventures commonly acknowledged as construction projects, which culminate in the creation of a structure as improvement to real property. See *Id.* at 1015; also, Legislative Journal — House at 2243 (1965). The Assembly's lack of concern for liability stemming from the use of manufactured building materials, considered in light of the foregoing precedent and analysis, con-

vinces this court that a contrary judicial finding would be violative of both the language and spirit of the statute of repose.

## II
### *Covered Class of the Statute*

In similar manner, authority on the scope of the statute's covered-class provision directs exclusion therefrom of materials suppliers and manufacturers as persons whose activities fall outside those described in the act.

Establishing the scope and application of said provision, the Superior Court laid the foundation for debate in the case of *Leach v. Philadelphia Savings Fund Society*, 234 Pa. Super. 486, 340 A.2d 491 (1975). While the covered class provision facially includes those "performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement. . . . ," the court in *Leach* resisted attempts to limit the statute's coverage to members of a particular profession or occupational group. Resting its determination of coverage, instead, upon the nature of services rendered, the court reasoned that:

"The Pennsylvania statute [   ] identifies its class not by the status or occupation of its members but rather by the contribution or acts done in relation to the improvement to the real property.

. . .

"The only relevant test, as shown by a careful reading of the statute, is whether the individual in fact lawfully furnished or performed any of the listed activities." *Leach, supra.* (footnote omitted)

Application of said test herein, according "plain meaning" to the statutory language, readily demon-

strates that these defendants are not members of the protected class. Although jointly they urge a contorted reading of the statute such as to equate their industrial "design" of the plywood in question and their subsequent *manufacture* thereof, to the "design . . . of construction," and "construction," respectively, there can be no reasonable disagreement that the interpretation they advance is not within the "plain meaning" of the statutory language. "Construction" and "manufacture" are two words distinct unto themselves, and their "plain meanings," in the context of the statute of repose, are not readily interchangeable. As aptly stated by the U.S. Court of Appeals for the Third Circuit: "In first looking at the language of [42 Pa.C.S.] §5536, it is evident that manufacturers are not covered under the plain meaning of the statute . . . *Nowhere* does the statute speak of the *manufacture* of an improvement." *Luzadder v. Despatch Oven Company,* 834 F.2d 355, 359 (3d Cir. 1987).[5] (emphasis supplied)

Application of further authority leaves little doubt of the tenuous nature of defendants' position. Cited not as challenges to the well-founded standard in *Leach, supra,* but as amplification of legislative will and judicial reason, both the legislative history of the statute and interpretive case law demonstrate an intended purpose in the act of protection for those involved in "construction" only as described therein; *consistent with* the decision in *Leach, supra.*

As discussed by several federal courts including the Third Circuit Court of Appeals; "the statute [of repose] was passed as a result of the lobbying efforts

5. Federal authority is cited often throughout the remainder of this text not as binding precedent on this or any other state court, but as persuasive interpretive rationale which probes the meaning of the covered-class provision of this statute to a degree not yet undertaken by Pennsylvania's appellate courts.

of the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America and meant to protect these groups of people — not manufacturers." *Springman v. Wire Machinery Corp. of America, supra* at 69. See also, *Luzadder v. Despatch Oven Co., supra* at 359; *Vasquez v. Whiting Corp.,* 660 F.Supp. 685, 688 (E.D. Pa. 1987).

In accordance with the foregoing assertion of the Third Circuit Court of Appeals, records of legislative debate show concern only for inclusion of designers, engineers, architects and contractors; and at one point in Senate debate, infer an intended exclusion of manufacturers. As argued by Senator Sesler, in his opposition to the original bill: "I believe, if we did impose a statute of limitation in this area, [to the benefit of contractors, architects or designers], *that I could think of many areas, in the field of manufacturing* and construction, *where we might conceivably impose a statute of limitation.*" Legislative Journal — Senate at 1015 (1965). (emphasis supplied)

Discussion in the House of Representatives, although limited, reflects exclusive concern with the protection of builders and design professionals. Representative Mebus explained:

"This bill does not provide a means for a designer or contractor to escape responsibility for his errors of omission or commission. It does provide for protection from accusations of professional failure long after his engagement is complete.

. . .

"Today a retired architect, engineer or contractor, . . . is forever liable for his previous acts and should therefore never cease to carry . . . very expensive liability insurance. . . .

"Lastly, I wish to make the point that the architect, engineer or contractor, once having completed his work, turns the project over to the owner and forever relinquishes his control of the project. He then has no knowledge of the misuse or abuse that may take place." Legislative Journal — House at 2243-4 (1965).

Echoing Mr. Mebus' sentiments on the builder's lack of control over the lifetime performance of a project, the Supreme Court of Pennsylvania took a similar stand in the case of *Freezer Storage Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978). Discussing the constitutional merit of the statute's distinction between classes of potential defendants, the court assumed that suppliers (i.e. manufacturers), could not enjoy the act's protection, while builders could. Noting that, " . . . the distinction drawn between the two classes is rational," the court thus explained its reasoning stating:

"Suppliers, [i.e. manufacturers] who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and construction only in limited ways — actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts. . . . The legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers.

"This Act of 1965[6] draws the sort of rational

---

6. The Act of 1965, 12 P.S. §65.1, although now repealed, was substantially identical to the current statute of repose, 42 Pa.C.S. §5536. Therefore, although the current enactment revises the structure of the language of its predecessor, that revision provides no basis for distinction by which to discount either the Supreme Court's analysis in *Freezer*

distinction, based on real differences in the business world, which our cases have consistently upheld."[7] *Freezer Storage Inc., supra.*

Although offered in dicta, the Supreme Court's reasoning highlights matters of policy of concern in the case at bar, and strengthens this court's belief that materials manufacturers must remain outside the statute's covered class, fully accountable under our laws of product liability.

Supportive of such a conclusion is the persuasive discussion of U.S. District Judge Cohn in the recent case of *Vasquez v. Whiting Corporation, supra.* In addressing the applicability of section 5536 to the manufacturers of a stationary overhead crane, the court reasoned that:

"A further policy rationale suggests that the statute of repose should not insulate from liability mere manufacturers or suppliers of products.[8] The policy underlying section 402A of the Restatement (Second) of Torts (1965), which has been adopted as the law of Pennsylvania, . . . is to protect and compensate victims of defective products while forcing suppliers of such products to bear the risk of loss . . . These policies would be undermined if manu-

*Storage, supra* or the legislative history cited earlier in this text. Cf. *Luzadder v. Despatch Oven Co.,* 834 F.2d 355 (3d Cir. 1987).

7. A scholarly and well-reasoned discussion of the development of construction law as it limits interpretation of the statute of repose, 42 Pa.C.S. §5536, appears in *Patraka v. Armco Steel Co.,* 495 F.Supp. 1013, 1018-9 (M.D. Pa. 1980).

8. As originally noted by Judge Cahn and reiterated now by this court:

"That the legislature intended to differentiate between suppliers of services and manufacturers or suppliers of products can be gleaned from the legislature's failure to enact a product liability statute of repose. In contrast, 16 states that have passed statutes of repose for architects, engineers and contractors also have enacted product liability statutes of repose." *Vasquez v. Whiting Corp., supra* at 689. (citation omitted)

facturers of products were able to claim that the statute of repose relieves them of liability merely because their products have somehow become 'improvements to realty.' " *Vasquez* at 689. (citations and footnotes omitted)

Recognizing possible conflict to be created in this state's most basic tort law upon an overly broad reading of the statute of repose, the district court's rationale was cited shortly thereafter in the Court of Appeals disposition of *Luzadder, supra.* Reversing the holding of the District Court therein that the manufacturer of an industrial oven was afforded protection by section 5536, the court concluded:

"We believe that manufacturers have, for good reason, been excluded from the protection of Pennsylvania's statute of repose. Application of section 5536 to manufacturers would cut the heart out of Pennsylvania's product liability law, by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property." *Luzadder* at 359.

## CONCLUSION

The effect of overextention of the statute's application thus stated, this court is mindful of far-reaching results to be engendered by this decision, whereby the statute of repose may be extended beyond previous interpretation and basic tort law may be reshaped. Such changes falling within the decisional ambit of the appellate courts, this court is compelled by constraints of judicial policy to seek reversal of its decision in this case in favor of appellate precedent, mindful of all the foregoing rationale.