**Catherine M. BEAVER, Individually and as the Administratrix of the Estate of Wayne Leon Beaver, Deceased, Plaintiff,**

**v.**

**DANSK INDUSTRI SYNDICAT A/S ("DISA") and Disamatic, Inc., Defendants.**

**Civ. A. No. 93–CV–1207.**

United States District Court, E.D. Pennsylvania.

Nov. 17, 1993.

Peter M. Patton, Philadelphia, PA, for plaintiff.

Thomas P. Wagner, James J. Kozuch, and Jill Carlin Schrager, Philadelphia, PA, for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Jurisdiction is based on diversity. 28 U.S.C. § 1332.. On February 3, 1993, plaintiff, Catherine M. Beaver, filed a complaint in the Philadelphia Court of Common Pleas commencing a wrongful death action and a survival action as the administratrix for the estate of Wayne Leon Beaver. This suit arises out of the death of plaintiff's husband, Wayne Leon Beaver. He died in the course of his employment, while he was working with a flaskless molding machine manufactured by defendant Dansk Industri Syndicat A/S ("DISA") and installed under the supervision of defendant Disamatic, Inc. ("Disamatic"). The case has been removed to this court by the defendants, and we now review their motion for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

■ On motion for summary judgment, the moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First Nat. Bank v. Lincoln Nat. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## II. FACTUAL BACKGROUND

After comparing the statement of facts submitted by plaintiff with those submitted by defendants, we are of the view that while some facts remain in question, for the purposes of deciding this motion, no material facts are at issue. The basic facts of this case are neither complicated nor in dispute. Defendant DISA is a foreign corporation based in Denmark. DISA designs, manufactures and sells various types and models of molding machines. Defendant Disamatic, an Illinois corporation, is the exclusive distributor of DISA's Disamatic automatic molding machines in North America. DISA is the sole shareholder of Disamatic.

In 1968, defendant DISA designed, manufactured and sold the Disamatic molding machine Model 2011 to plaintiff's decedent's employer, Stanley G. Flagg & Company, Inc. ("Flagg"), a division of Amcast Industrial Corp. ("Amcast"). Flagg manufactures pipe fittings, and operates an iron foundry and a brass foundry for that purpose.

The machine in question is one of at least five Disamatic molding machines in Flagg's iron foundry, where it is designated as machine No. 4. This Model 2011 molding machine was designed for the purpose of making castings. Machine No. 4 is six to eight feet wide, 15 to 20 feet long, and approximately eleven feet high. It weighs an estimated 40,000 pounds. Disamatic, DISA's exclusive distributor, supervised and observed the installation and start-up of machine No. 4 at the Flagg foundry.

The molding machines at the Flagg foundry are integrated with other components and systems in the building. A large sand conveyer system runs above the row of five molding machines at the Flagg iron foundry, and a molten metal pouring process is connected to each machine. Machine No. 4 was bolted to the building's floor in 1968 and is connected to various utilities, including electric, air and water supplies. These utilities are connected by hard piping and conduit.

Wayne Leon Beaver, plaintiff's deceased husband, was employed by Flagg at its iron foundry. On September 16, 1992, Beaver was working with molding machine No. 4 when the molding chamber of the machine suddenly and unexpectedly opened. Beaver suffered crush injuries to the head which resulted in his tragic death. Subsequently, on February 3, 1993, plaintiff filed a three count complaint which was removed to this court. Plaintiff contends that the recklessness and negligence of defendants, and errors in the manufacturing of the aforementioned Disamatic molding machine, rendered the machine unreasonably dangerous and defective and that this condition proximately caused Mr. Beaver's death.

In response to plaintiff's complaint, defendants have filed this motion for summary judgment. Defendants' sole argument is that Pennsylvania's twelve-year statute of re-

pose set forth in 42 Pa.C.S. § 5536 bars plaintiff's action. Plaintiff disagrees. We discuss both parties' arguments below.

## III. DISCUSSION

### A. *The Pennsylvania Statute of Repose*

Defendants believe the plaintiff's suit to be time-barred by the Pennsylvania statute of repose, which provides:

> (a) General Rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
>
>    \*     \*     \*     \*     \*     \*
>
> (3) Injury to the person or for wrongful death arising out of such deficiency.

42 Pa.C.S. § 5536. The crux of defendant DISA's argument is that plaintiff's claims are barred because DISA designed, manufactured, and sold the molding machine, which eventually became an improvement to real property. *See Memorandum of Law in Support of DISA and Disamatic, Inc.'s Motion for Summary Judgment* at 10. Defendant Disamatic claims similar protection under the statute of repose, since it supervised and observed the construction of the molding machine when it was installed in 1968. *Id.*

There is no question that the Disamatic molding machine was manufactured and installed at the Flagg foundry more than 12 years ago.[1] Thus, the sole remaining issues are: (1) whether the crane constitutes an "improvement to real property" as that phrase is used in the statute of repose; and (2) whether defendants DISA and Disamatic are within the class of persons protected by the statute.

### B. *Applicable Law*

A federal court exercising diversity jurisdiction must apply the substantive law of the state in which the court sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). State law includes authoritative pronouncements by the highest court of the state. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). Absent clear guidance from the Pennsylvania Supreme Court, however, we must predict how it would decide the issues and will, when persuasive, rely on decisions of the intermediate appellate court, unless we are convinced that the supreme court would decide otherwise. *West v. American Telephone & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.1980).

---

1. Plaintiff argues in her memorandum in opposition to defendants' motion for summary judgment that defendants continued to provide additional components to the Disamatic machine through at least 1988 and, therefore, the machine was not completed until that year. Plaintiff further claims that the statute of repose period does not begin to run until the improvement to real property is completed. Accordingly, plaintiff alleges that her claims in this matter are not time-barred.

   Plaintiff admits that defendant DISA sold Disamatic molding machine No. 4 to the Flagg foundry in 1968. *See Plaintiff's Memorandum of Law in Opposition to Motion of Defendants DISA and Disamatic, Inc. for Summary Judgment* at 4. The machine also was delivered by defendant Disamatic and installed by Flagg personnel in that year. Plaintiff relies on a federal district court case, *Patraka v. Armco Steel Co.,* 495 F.Supp. 1013 (M.D.Pa.1980), to support the proposition that the statute of repose period begins to run only when the *entire improvement* is complete. Because defendants continued to send safety

   manuals and signs to Flagg as additions to the Disamatic molding machine, plaintiff contends that the machine was not complete until 1988. Therefore, plaintiff claims that the statute's period has not expired.

   In *Patraka,* however, the court reasoned that by employing the phrase "after completion of the construction of such improvement," the General Assembly meant to mark the commencement of the repose period at the point when third parties are first exposed to defects in design, planning, or construction. The court, therefore, held that the twelve-year period begins when the entire construction project is so far completed that it can be used by third parties. *See also, Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 489 A.2d 262, 266 (1985). In this case, the Flagg foundry included Disamatic molding machine No. 4 in its production operations shortly after it was installed in 1968. At that time, employees at the Flagg foundry were exposed to the machine as an improvement to the plant. The twelve-year statutory period began to run in 1968 and expired in 1980.

Therefore, while this court may not ignore the decisions of the Pennsylvania Superior Court, we may reach a contrary result if other persuasive data lead us to predict that the Pennsylvania Supreme Court would hold otherwise.

## C. *Improvement to Realty*

We must first determine whether Disamatic molding machine No. 4 is an "improvement to realty" under the statute of repose. The Pennsylvania Supreme Court, in *McCormick v. Columbus Conveyer Co.*, 522 Pa. 520, 564 A.2d 907 (1989), defined "improvement" as:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

564 A.2d at 909, *quoting from* Black's Law Dictionary 682 (5th ed. 1979). The court believed that this definition comports with the plain and common usage of the term "improvement." Under this definition, the court rejected the plaintiff's argument that a coal delivery system, as part of a powerhouse, which provided heat and hot water for 68 buildings, was a "product." It held that the system was an improvement to real property, as a matter of law. *Id.* at 909–10.

The Pennsylvania courts have consistently applied "improvement" with an eye towards giving that term an ordinary meaning. *See Catanzaro v. Wasco Prod., Inc.*, 339 Pa.Super. 481, 489 A.2d 262, 265 (1985) (a skydome/skylight is an improvement); *Mitchell v. United Elevator Co.*, 290 Pa.Super. 476, 434 A.2d 1243, 1249 (1981) (an elevator); *Fetterhoff v. Fetterhoff*, 354 Pa.Super. 438, 512 A.2d 30, 31 (1986) (same); *Goodrich v. Luzerne Apparel Mfg. Corp.*, 356 Pa.Super. 148, 514 A.2d 188, 189 (1986) (an electrical panel board); *McConnaughey v. Building Components, Inc.*, 401 Pa.Super. 329, 585 A.2d 485, 487 (1990) (a roof truss), *allocatur granted*, 527 Pa. 667, 593 A.2d 842 (1991); *Radvan v. General Electric Co.*, 394 Pa.Super. 501, 576 A.2d 396, 397 (1990) (a weld and side trim machine).

In *Ferricks v. Ryan Homes, Inc.*, 396 Pa.Super. 132, 578 A.2d 441 (1990), the court held that plywood, later incorporated into a structure, is not an improvement to real property. It reasoned, "The plywood was simply a component part of a wall or floor which eventually made up the improvement on the real estate." 578 A.2d at 443. The Third Circuit Court of Appeals concurred with the Pennsylvania court's distinction between an "improvement" and component part in *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 114 (3d Cir.1992).

In *Noll v. Paddock Pool Builders, Inc.*, 416 Pa.Super. 284, 611 A.2d 219 (1992), the court addressed the issue whether starting blocks bolted to a swimming pool are an improvement to real property. Borrowing the analysis the Pennsylvania Commonwealth Court used to define "real property" for the purposes of sovereign immunity (see 42 Pa.C.S. § 8541 *et seq.*), the court categorized "improvement to real property" into three groups. *Noll*, 611 A.2d at 224. The first includes items that are manifestly furniture, as distinguished from improvements, and not affixed to the real property. The second includes items that are so annexed to the property that they cannot be removed without materially injuring the items or the real estate. The third includes items that, albeit physically connected to the property, are so affixed as to be removable without destroying or injuring them or the real estate; these become part of the realty or remain personalty, depending on the intention of the annexing party at the time of annexation. *Id.* at 224, *citing Canon–McMillan School District v. Bioni*, 127 Pa.Commw. 317, 320–21, 561 A.2d 853, 854 (1989). As to intent, "it is not so much what a particular party intended his legal rights to be, as it is what intended use of the property was manifested by the conduct of the party." *Id.* 611 A.2d at 225, *quoting from Bioni*, 561 A.2d at 854–55 (internal quotation marks omitted).

While these guidelines are an "aid [to] our Court's analysis of what constitutes an improvement to real property," *id.*, until adopted by the Pennsylvania Supreme Court, they do not finally define "improvement." Ultimately, "the determination of what con-

stitutes an improvement to real property is made on a case-by-case basis." *Id.* 611 A.2d at 222.

We believe the Disamatic molding machine in question is an improvement to real property. If we apply the *Noll* guidelines, the machine fits within category three. That is, the parties intended to annex the molding machine as part of the structure of the foundry. While the plaintiff makes much of the fact that affidavits of officials from Flagg and Amcast testify to the intent of the parties to classify molding machine No. 4 as personal property, the machine has never been moved or disassembled since it was installed in 1968 at the foundry. In fact, Flagg had integrated the machine fully into its metal forging process. To the extent that the legal test of intended use of the property is what was "manifested by the *conduct* of the party," *Noll*, 611 A.2d at 225 (emphasis added), the plaintiff has misconstrued the issue. The undisputed facts in this case show that the Flagg foundry has relied on Disamatic machine No. 4 as an integral part of foundry production for the past 25 years.

Moreover, a qualitative examination of the machine's physical features shows that it is an improvement to real property. The machine is a large, stationary object weighing nearly 20 tons. It measures approximately 20–feet by 6–feet in length and width, and is about 11 feet high. It is securely bolted to a concrete floor and has remained in this position continuously since 1968. The machine is connected to conduit and hard piping for electric, water and air utilities. In addition, an overhead sand conveyor and other equipment have been built around the machine. As an integrated part of the foundry's operation, the Disamatic machine adds to the value of the Flagg real estate. It is generally more akin to a "finished product such as a window, skydome, or elevator [which] is meant for use solely as a fixture, as an improvement to real estate," *see Ferricks*, 578 A.2d at 445, than a component material such as plywood. This case is closely analogous to the facts the Superior Court faced in *Radvan, supra,* when that court found a weld and side trim machine to be an improvement because:

it had been in place for more than thirty years; it had never been moved since its installation; it was bolted to the floor and was connected to conduit piping for power; and because its "weight was in dozens of tons and would have been very difficult to dismantle."

576 A.2d at 397.

For all of the above reasons, we hold that Disamatic molding machine No. 4 is an improvement to real property.

### D. *Protected Persons Under the Pennsylvania Statute of Repose*

The remaining issue is whether DISA and Disamatic are protected persons under the statute. We will analyze the question first as it applies to defendant DISA, the manufacturer of the molding machine which eventually was incorporated into the Flagg foundry by others as an "improvement to real property."

### 1. *DISA*

The statute speaks in terms of "any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property...." 42 Pa.C.S. § 5536. The federal district courts have placed a more limited interpretation on the persons protected by the Pennsylvania statute than have some Pennsylvania appellate courts. *See Luzadder v. Despatch Oven Company,* 834 F.2d 355, 359 (3d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988) ("Application of § 5536 to manufacturers would cut the heart out of Pennsylvania's product liability law, by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property."); *Springman v. Wire Machinery Corp.,* 666 F.Supp. 66, 69 (M.D.Pa.1987); *Vasquez v. Whiting Corp.,* 660 F.Supp. 685, 688 (E.D.Pa.1987) ("There is no legislative history ... that suggests the statute of repose would bar suits against manufacturers.") *Compare, McConnaughey v. Building Components,* 585 A.2d at 487 (protection given to manufacturer of preconstructed roof trusses used in con-

struction of barn); *Catanzaro v. Wasco Products, Inc.*, 489 A.2d at 262 (manufacturer of skylight which was incorporated into a building protected); *Schmoyer v. Mexico Forge, Inc.*, 423 Pa.Super. 593, 621 A.2d 692 (1993) (protection extended to manufacturer of Spin Around).

The Third Circuit Court of Appeals initially noted in *Luzadder, supra*, that it is evident that manufacturers are not covered under the plain meaning of the Pennsylvania statute. Nowhere does the statute of repose speak of the manufacture of an improvement.

Judge Muir noted in *Springman* that "[t]he history of [§ 5536] reveals that the statute was passed as a result of the lobbying efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America and meant to protect these groups of people—not manufacturers." 666 F.Supp. at 69. Moreover, in *Vasquez*, Judge Cahn cites some legislative history of the predecessor statute to § 5536, (there is no such history for § 5536 itself), which supports Judge Muir's interpretation. One Mr. Mebus, in speaking in support of the statute, stated that it would "provide[ ] for protection from accusations of professional failure long after his engagement is complete." 660 F.Supp. at 688, n. 3. A Mr. Sesher, speaking in opposition to the bill, stated, "I have never been under the impression that undue harassment has occurred to contractors, architects, or designers, so as to necessitate this type of legislation." *Id.*

We agree with our district court brethren that manufacturers have, for good reason, been excluded from the protection of Pennsylvania's statute of repose. The Third Circuit Court of Appeals also has affirmed this interpretation, claiming that "[a]pplication of § 5536 to manufacturers would cut the heart out of Pennsylvania's product liability law, by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property." *Luzadder*, 834 F.2d at 359. As Judge Cahn ably explained in *Vasquez:*

> The policy underlying § 402A of the Restatement (Second) of Torts (1965), which has been adopted as the law of Pennsylvania, ..., is to protect and compensate victims of defective products while forcing suppliers of such products to bear the risk of loss.... These policies would be undermined if manufacturers of products were able to claim that the statute of repose relieves them of liability merely because their products have somehow become "improvements to real property."

660 F.Supp. at 689.

The Pennsylvania Supreme Court offered, in dicta, a persuasive rationale for distinguishing between professional builders and designers and manufacturing companies for purposes of products liability law. "Suppliers who typically produce items by the thousands, can easily maintain high quality control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his design and construction only in limited ways—actual use in the years following construction is their only real test...." *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715, 719 (1978).

The Third Circuit also warned, in *Luzadder*, that to expand the scope of the statute of repose to cover manufacturers would draw arbitrary, artificial distinctions between manufacturers of different products. 834 F.2d at 360. The court reasoned that artificial distinctions, such as granting protection to the maker of a furnace but not to the maker of an automobile, were inconsistent with the principles of tort law as enunciated in the seminal case of *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916). In *MacPherson*, the New York Court of Appeals held that a manufacturer owes a duty of reasonable care to third persons, even though there exists no contract between them, and that therefore the manufacturer is liable in tort to such persons for injuries caused by the manufacturer's defective products. *Id.* This principle founded the basis for modern-day products liability law.

Indeed, the Pennsylvania Supreme Court had criticized any artificial distinctions between real and personal property, albeit in a different context, in *Foley v. Pittsburgh–Des*

*Moines Company,* 363 Pa. 1, 68 A.2d 517 (1949):

> There is no logical basis for such a distinction, and it would obviously be absurd to hold that a manufacturer would be liable if negligent in building a small, readily movable tank which would undoubtedly be a chattel, but not in building an enormously large and correspondingly more potentially dangerous a one that legalistically was classified as realty. The principle inherent in the *MacPherson v. Buick Motor Co.* case and those that had followed it is that one who manufactures and delivers any article or structure with the knowledge that it will be subject to use by others, must for the protection of human life and property, use proper care to make it reasonably safe for such users and for those who may come into its vicinity; certainly the application of that principle cannot be made to depend upon the merely technical distinction between a chattel and a structure built upon the land.

68 A.2d at 533.

Despite this persuasive presentation of the law on this matter, defendants argue that the Third Circuit recently has foregone the above approach and has decided to accept the more expansive interpretation of the Pennsylvania statute of repose that has been suggested by some of the state's appellate courts.[2] Defendants principally rely on *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d at 114, to demonstrate the Third Circuit's change of thinking on this issue. In *Fleck,* the Third Circuit agreed with the district court's decision to direct a verdict for Sylvan Pools, the seller of an above ground pool. The district court ruled that Sylvan Pools was protected by Pennsylvania's statute of repose and plaintiff's claim against Sylvan was time-barred. Defendants' reliance on this case is misplaced. In that case, Sylvan had sold the pool and subsequently handled its construction through a contractor. A homeowner testified that the pool's installation was left "totally up to KDI Sylvan." *Fleck,* 981 F.2d at 115. Based on this evidence, the *Fleck* court concluded that Sylvan Pools was within the class of persons protected by the statute of repose.

Defendants' reliance on the Third Circuit's ruling in *Fleck* is misplaced. The *Fleck* court did not rule on whether the statute of repose applied to a manufacturer whose products are incorporated into real estate by others as improvements, as the court in *Luzadder* had ruled. In *Fleck,* Sylvan Pools, as the seller, handled construction of the pool, albeit through contractors, as it was built and installed in the homeowner's backyard. That is, Sylvan Pools acted to "furnish[ ] the design, planning, supervision or observation of construction," 42 Pa.C.S. § 5536, of the pool as an improvement to real property. The natural gas fired furnace in *Luzadder,* however, was not an "improvement to real property" when the manufacturer in that case merely fabricated and sold the furnace and others attached it to real estate.

Similarly, in the case at bar, defendant DISA merely manufactured the Disamatic molding machine in Denmark, as one of many mass-produced machines. DISA then shipped it intact to the United States in a single shipping container. Both plaintiff and defendants agree that DISA did not make contract arrangements with the Flagg foundry, to integrate the Disamatic machine within the plant's production process, nor did DISA assist in the installation of the molding machine. Thus, the molding machine was *not* an "improvement to real property" when

---

2. Although the Pennsylvania Supreme Court has yet to reach the issue of whether the statute of repose applies to manufacturers whose products are incorporated into real estate by others as improvements, the Pennsylvania Supreme Court in *McCormick v. Columbus Conveyer Co.,* stated:

> It is abundantly clear from the record that Columbus did more than supply a standard piece of equipment, indistinguishable from any other it mass-produced, that by chance became affixed to the University's property. Using specifications and a general layout provided by Rust Engineering, Columbus devised a coal delivery system to be integrated into the construction of the new power plant that was uniquely suited to that site.

564 A.2d at 910. This passage calls attention to the distinction between products which are produced for incorporation into a finished product and the finished product itself which is designed to be included as a fixture or improvement in real estate. The persons who provide these two distinct services can be labelled as manufacturers and builders.

DISA fabricated and sold it. The molding machine was incorporated into the Flagg foundry by others and, only at that time, became an "improvement to real property." Accordingly, under the plain language of the statute, and after review of the Third Circuit's statutory interpretation, readings of legislative history and policy considerations, we find that defendant DISA is not entitled to the statutory protection afforded by 42 Pa.C.S. § 5536.

### 2. Disamatic

■ Defendant Disamatic also claims protection under the Pennsylvania statute of repose. Disamatic, an Illinois corporation, is engaged in the business of selling, servicing, repairing and distributing DISA's Disamatic molding machines in North America. *See Plaintiff's Complaint* at 3. Disamatic claims that it supervised and observed construction of an improvement to real property when the molding machine was installed in 1968 at the Flagg foundry. In support of its claim, defendant provides the affidavit of the Disamatic representative who observed and supervised the installation of Disamatic molding machine No. 4 at the Flagg foundry. *See Defendants DISA and Disamatic's Memorandum of Law in Support of Defendants Motion for Summary Judgment* at Exhibit C. Although plaintiff disputes any contention that the Disamatic service representative participated in the installation of the Disamatic molding machine, it is undisputed that he "observed and supervised" the installation and start-up of the machine. *See Plaintiff's Memorandum of Law in Opposition to Motion of Defendants DISA and Disamatic, Inc. for Summary Judgment* at 19.[3]

Under the plain meaning of the Pennsylvania statute of repose, the class of persons protected by the statute includes, "any person lawfully performing or furnishing the . . . supervision or observation of construction, . . . of any improvement to real property. . . ." 42 Pa.C.S. § 5536.

The appropriate inquiry, with regard to this defendant, is whether Disamatic lawfully furnished or performed any of the listed activities in the statute. *Leach v. Philadelphia Sav. Fund Soc.*, 234 Pa.Super. 486, 340 A.2d 491, 493 (1975). It is irrelevant, however, whether Disamatic actually installed the molding machine. The Pennsylvania Superior Court already has rejected the notion that to be protected a supplier of a product "had to assist in its installation." *Catanzaro*, 489 A.2d at 266. A person is protected under the statute of repose merely for "furnishing the . . . supervision or observation of construction" of any improvement to real estate. 42 Pa.C.S. § 5536. By plaintiff's own admission, the Disamatic service representative "observed and supervised" the installation and start-up of the Disamatic molding machine at the Flagg foundry. Unlike the defendant DISA, who manufactured the molding machine before it became an improvement to the Flagg foundry, Disamatic participated in the actual construction of the machine as part of the foundry.

Under the plain meaning of 42 Pa.C.S. § 5536, Disamatic is within the class of persons protected by the statute. Accordingly, we find that the claims against Disamatic are time-barred and, therefore, we will grant summary judgment under the Pennsylvania statute of repose in favor of defendant Disamatic.[4]

---

**3.** Plaintiff does not deny, however, the additional assertion presented in the affidavit of the Disamatic service representative, Mr. James Petrosky, which indicates that he supervised the installation of the Disamatic machine. *See* Affidavit of James Petrosky, *Defendants' DISA and Disamatic's Memorandum of Law in Support of Defendants' Motion for Summary Judgment*, Exhibit C. More specifically, Mr. Petrosky claims that his observation and supervision of the installation of the molding machine in question included: (1) aligning the machine; (2) mounting the control panel; (3) leveling the pouring rail; (4) aligning the pouring zone with respect to the machine;

(5) checking the installation of air pipes, power wires, the sand container, and cooling zone; (6) performing the initial start-up and making certain readjustments on the machine; (7) advising the foundry personnel of certain factors that should be taken into consideration when designing, constructing, and installing auxiliary equipment connected to the machine; and (8) instructing the foundry personnel in the operation and maintenance of the machine. *Id.*

**4.** Plaintiff claims, in the alternative, that even if defendants were found to be within the protection of the statute of repose, plaintiff's failure to

## V. CONCLUSION

For the reasons outlined in the foregoing memorandum, this court will grant summary judgment in favor of defendant Disamatic under the Pennsylvania statute of repose. We will deny summary judgment, however, to defendant DISA under the same statute. This matter shall proceed to a jury trial with regard to defendant DISA. An appropriate order follows.

### ORDER

AND NOW, this 16th day of November, 1993, upon consideration of Defendants' Motion for Summary Judgment and Memorandum in Support thereof, filed on September 29, 1993, as well as Plaintiff's Response and Reply thereto, filed on October 28, 1993, it is hereby **ORDERED** as follows:

1. the Motion for Summary Judgment is **DENIED** with regard to Defendant Dansk Industri Syndicat A/S ("DISA");

2. the Motion for Summary Judgment is **GRANTED** with regard to Defendant Disamatic, Inc. and judgment is entered in favor of Defendant Disamatic, Inc.;

3. Defendants' Motion for Leave of Court to File a Reply Memorandum, filed on November 2, 1993, is **DENIED** as moot; This matter shall proceed to trial.

warn claims and other post-sale negligence claims fall outside the scope of the statute and, therefore, are not barred. This argument contradicts the plain reading of the Pennsylvania statute. The relevant portion of section 5536 reads:

a civil action ... must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

\* \* \* \* \* \*

(3) Injury to the person or for wrongful death arising out of any such deficiency. 42 Pa.C.S. § 5536. "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Leach v. Philadelphia Sav. Fund Soc.*, 340 A.2d at 493. Essentially, the statute of repose eliminates *all* causes of action, including both theories of negligence and strict liability, arising out of the construction or design of an improvement in real property which occurred more than 12 years before the accident. *Schaffer v. Litton Systems, Inc.*, 372 Pa.Super. 123, 539 A.2d 360, 361 (1988), *allocatur denied*, 520 Pa. 583, 549 A.2d 916 (1988). In analyzing section 5536, the Pennsylvania Superior Court has referred to its predecessor statute, the Act of December 22, 1965, P.L. 1183, 12 P.S. § 65.1 *et seq.*, and has commented on it in the following manner:

The Act of 1965 does not merely bar a litigant's right to a remedy, but *the Act completely abolishes and eliminates the cause of action itself.* By eliminating a cause of action, the Act of 1965 is a statute of repose ...

*Schaffer*, 539 A.2d at 362 (emphasis added).

In this case, all of plaintiff's claims against Disamatic, including a failure to warn claim, arise out of an alleged deficiency in the design or construction of the Disamatic molding machine. Plaintiff cannot resurrect a cause of action through artful pleading. *See Penn Terra Ltd. v. Dept. of Environ. Resources*, 733 F.2d 267, 275 (3d Cir.1984) ("We generally agree, of course, that [ ] legislative intent ... should not be defeated by artful pleading that depends on form rather than substance.") It is also of no moment that Disamatic sold the machine in question to Flagg because, as noted earlier in the opinion, they furnished the supervision and observation of the construction of an improvement under the statute of repose. *See Fleck v. KDI Sylvan Pools, supra*, at 115. Therefore, all claims against Disamatic in this matter are time-barred.