In re **BARTO TECHNICAL SERVICES, INC., f/k/a Wean Incorporated, Debtor.**

**BARTO TECHNICAL SERVICES, INC., f/k/a Wean Incorporated, Movant,**

v.

**Christine LAWRENCE, Respondent.**

**Bankruptcy No. 93–22540–JKF. Motion No. DZ–13.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 27, 1995.

David Ziegler, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for movant.

Ronald L. Wolf, Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for respondent.

Mark S. Seewald, Sable, Makoroff & Gusky, Pittsburgh, PA, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is Debtor's objection to the claim of Christine Lawrence (hereafter "Respondent").[1] The Official Committee of Unsecured Creditors joined in Debtor's objection.

Before the bankruptcy was filed, a motion for summary judgment was pending in Respondent's wrongful death action in state court. The state suit included a products liability claim against various defendants, including Debtor and its subsidiary, Berkeley–Davis, Inc., with respect to a piece of equipment which crushed Respondent's husband, Donald Lawrence, causing his death. We will address the matters raised in the bankruptcy court.

The facts underlying this dispute are essentially undisputed. Mr. Lawrence was a millwright at the Steelton, Pennsylvania, plant of Bethlehem Steel Corporation. The accident occurred while Mr. Lawrence was attempting to perform maintenance or repairs on a break-off arm which is part of a continuous longitudinal inside seam pipe welding machine and conveyor system. The machine had been turned off at an electrical control panel in preparation for repairs, but this action did not cut off the hydraulic pumping system that operates the arm.[2] While Mr. Lawrence was in the pit performing his task, the break-off arm rose and hit him in the head. In order to reset the arm and have it retract after the electricity was cut off, power to the line had to be restored. See Claimant[ ] Christine Lawrence's Memorandum of Law in Support of Response to Objection of Barto Technical Services, Inc. to Claim of Christine Lawrence (hereafter Claimant's Memorandum). *See also id.* at Exhibit J, letter from Consulting Engineers, Inc., Exhibit I, Deposition of Patrick J. Midile at 94–99, 104. Under the circumstances, once the break-off arm was activated, the only way to retract it was to restore power at a switch that was 30 feet away from the site of the accident.[3] Although the retraction was accomplished, Mr. Lawrence's injuries were fatal.

The pleadings do not clearly explain the basis for assertion of a claim against Debtor. Respondent's state court complaint avers that, in 1959, Bethlehem Steel Corporation purchased the equipment which had been manufactured by Berkeley Company. In 1960 the assets and liabilities of Berkeley Company were transferred to the Berkeley–Davis Company which continued operation as Berkeley–Davis, Inc. Claimant's Memoran-

---

1. The parties have agreed to treat the objection to claim as a motion for summary judgment on the issue of the statute of repose.

2. "It is only the break-off arm section of the equipment about which [Respondent] is critical." Claimant[ ] Christine Lawrence's Memorandum of Law in Support of Response to Objection of

Barto Technical Services, Inc. to Claim of Christine Lawrence at 11, Docket Entry 441.

3. The break-off arm could be retracted in at least two ways: one when pipe was on the line and one when no pipe was on the line. Only the latter is relevant because there was no pipe on the line at the time of this accident.

dum at Exhibit A at 2, ¶¶ 6A, 6B. At the time the equipment at issue was designed and produced, Berkeley–Davis, Inc., was in the business of designing and manufacturing the type of equipment involved in this case including the type of device represented by the break-off arm. Declaration of John M. Sant, P.E., (hereafter "Sant Declaration") at ¶¶ 6, 14. The break-off arm functioned as part of the inside welding system.[4] At the time of Mr. Lawrence's accident, Berkeley–Davis, Inc., was a wholly owned subsidiary of Debtor.

In the state court complaint Respondent also alleged that, as of the date of Mr. Lawrence's accident (January 25, 1991), Debtor "may have assumed all relevant liabilities arising from the design, manufacture . . ." of the equipment. *See* Claimant's Memorandum at Exhibit A at 2–3, ¶¶ 3, 4, 7. Debtor does not contest the issue of its liability except on the basis of the Pennsylvania statute of repose, 42 Pa.Cons.Stat.Ann. § 5536. For purposes of this opinion, therefore, we assume, without deciding, that Debtor assumed the relevant liabilities before Donald Lawrence's accident.

With this hypothesis utilized as the basis for the claim against Debtor, if a cause of action no longer exists with respect to Berkeley and Berkeley–Davis, it no longer exists as to Debtor because the Pennsylvania statute of repose abolishes the cause of action, not merely the right to a remedy. This difference distinguishes the statute of repose from a statute of limitations. *See Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 489 A.2d 262, 264 (1985), citing *Mitchell v. United Elevator Co., Inc.,* 290 Pa.Super. 476, 434 A.2d 1243, 1248 (1981) (relying on *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978); *Misitis v. Steel City Piping Co.,* 441 Pa. 339, 272 A.2d 883 (1971) (construing the predecessor of § 5536). Even if Debtor assumed all liabilities of its subsidiary Berkeley–Davis, Inc., and Berkeley–Davis's predecessor, there is no cognizable cause of action and, therefore,

no liability can be imposed, if the statute of repose applies.

■ We must decide whether Pennsylvania's statute of repose operates to bar Respondent's claim. The statute of repose is entitled "Construction projects" and provides

(a) **General rule.**—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of any such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

(b) **Exceptions.**—

(1) If an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.

(2) The limitation prescribed by subsection (a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.

(c) **No extension of limitations.**—This section shall not extend the period within

---

4. Berkeley Company designed and manufactured the entrance conveyors for the three inside welders, the three inside welder lines, and the three exit conveyors for the inside welders. Sant Declaration at ¶ 6.

which any civil action or proceeding may be commenced under any provision of law. 42 Pa.Cons.Stat.Ann. § 5536.

■ The statute of repose applies to abrogate a cause of action when three elements are satisfied: (1) the equipment is an improvement to real estate; (2) more than 12 years have elapsed between the completion of the improvement and the injury; and (3) the activity complained of is within the class which the statute was intended to protect. *Schmoyer v. Mexico Forge, Inc.*, 423 Pa.Super. 593, 621 A.2d 692, 694 (1993), *rev'd on other grounds*, 538 Pa. 1, 645 A.2d 811 (1994); *McConnaughey v. Building Components, Inc.*, 401 Pa.Super. 329, 585 A.2d 485, 487 (1990), *rev'd on other grounds*, 536 Pa. 95, 637 A.2d 1331 (1994). The second element is not disputed insofar as the parties agree that the equipment at issue was installed in 1959 or 1960 and that more than 12 years have elapsed between installation of the welding machine and conveyor system and Mr. Lawrence's accident. The first and third elements are disputed.

Respondent contends (1) that the equipment is not an improvement to real estate but is personalty; (2) that Debtor is a manufacturer and, therefore, not within the class protected by the statute; and (3) that the statute of repose does not bar her claim because the statute does not apply to causes of action based on a theory of failure to warn of the risk. We find that there are no material facts in dispute relevant to a determination of whether the statute of repose applies, and that this issue may be determined as a matter of law.

### I. *Improvement to Real Estate*

■ Whether equipment is an improvement to real estate is a question of law. *Bioni v. Canon–McMillan School District*, 521 Pa. 299, 555 A.2d 901 (1989). *See also Wilson v. Ridgeway Area School Dist.*, 141 Pa.Cmwlth. 617, 596 A.2d 1166, 1168 (1991), *allocatur denied*, 530 Pa. 650, 607 A.2d 258 (1992). What constitutes an improvement to real estate is a determination which must be made on a case-by-case basis. *Noll v. Pad-*

*dock Pool Builders, Inc.*, 416 Pa.Super. 284, 611 A.2d 219, 222 (1992), *rev'd on other grounds sub nom. Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81, (1994); *Beaver v. Dansk Industri Syndicat A/S (DISA)*, 838 F.Supp. 206, 211 (E.D.Pa.1993).

■ Respondent contends that the break-off arm, which functioned as part of the inside welding system, was removable and, therefore, could not constitute an improvement to real estate. Pennsylvania law, however, recognizes that removability, in and of itself, is not controlling as to whether machinery and equipment are part of the realty or freehold. *Central Lithograph Co. v. Eatmor Chocolate Co.*, 316 Pa. 300, 175 A. 697, 698–99 (1934).

Recently, in a case involving the statute of repose, the Pennsylvania Supreme Court expounded on the definition of "improvement to real property". In *Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81 (1994), the court referred to the law of fixtures in this regard. It recited general factors to be used in determining when an article of personalty is to be considered a fixture:

(1) the relative permanence of attachment to realty;

(2) the extent to which the chattel is necessary or essential to the use of the realty; and

(3) the intention of the parties to make a permanent addition to the realty.

643 A.2d at 87 (citations omitted). We will examine each element.

#### 1. *Permanence*

The equipment is permanently attached to the building. The evidence of record establishes that the break-off arm was interwoven into the function of the pipe mill as part and parcel of the continuous longitudinal inside seam pipe welding machine and conveyor system. Each inside welder[5] is installed in a huge concrete pit, ten feet deep. Declaration of Harold Wagner (hereafter "Wagner Declaration") at ¶ 11. Each welder is anchored in

---

5. Berkeley–Davis manufactured the three outside welders which are part of the plant but are not at issue in this case. Sant Declaration at ¶ 6.

concrete foundations designed and constructed to support it. Anchor bolts to which the equipment is attached are cast into the concrete. When the equipment was attached to the anchor bolts, the area between the equipment base plates and the concrete foundations was filled with concrete grout. Wagner Declaration at ¶¶ 10, 12. Each welder weighs over 500,000 pounds, each conveyor weighs over 15,000 pounds. Sant Declaration at ¶¶ 34, 35. The equipment has not been moved since 1960 when it was put in place.[6] Wagner Declaration at ¶ 13.

John Sant is a mechanical engineer who was employed from 1950 through 1985 by various companies which became part of Debtor's family of companies and which engaged in the design and manufacture of industrial welders and related equipment. Sant stated that the break-off arm is an integral part of the equipment which is an essential part of the mill. The mill could not operate for its intended purpose without the equipment. *See* Sant Declaration at ¶ 17. All of the equipment, except for some minor components, such as switches and pumps, were fabricated by Debtor's subsidiaries. *Id.* at ¶ 13. Specifically, Sant stated that the break-off arm, a necessary part of the inside exit conveyor, was specially designed and manufactured by the Berkeley companies for the Bethlehem plant and any replacement would have to be custom-made from Berkeley's 1959 drawings. *Id.* at ¶¶ 13, 14. The hydraulic and electrical systems for the equipment "were designed by Berkeley or an outside contractor working for Berkeley and incorporated into the equipment by Berkeley." *Id.* at ¶ 16.

Ernest Donofrio, Jr., an employee at the Steelton Plant, testified that the welder unit was never moved from its location. Although pieces of the various items of equipment can be removed for repair, removal is not routinely done. Deposition of Ernest Donofrio, Jr., at 33–34, Claimant's Supplemental Submission to the Court at Exhibit H, Docket No. 515. In fact, Mr. Lawrence was attempting to repair the break-off arm from inside the pit when the accident occurred. Claimant's Memorandum at Exhibit J, Letter of January 31, 1994, from Consulting Engineers, Inc., to counsel for Respondent. The equipment can not be moved without material damage to and severe interference with the function of the mill. Sant Declaration at ¶¶ 17, 36.

*Radvan v. General Electric Co.*, 394 Pa.Super. 501, 576 A.2d 396 (1990), *appeal denied*, 527 Pa. 602, 589 A.2d 692 (1991), is similar to the instant case. Radvan was injured while working on a weld and side trim machine in a steel plant. The machine was designed by L.K. Comstock and Co., Inc., and the issue was whether the statute of repose applied, thereby requiring affirmance of the trial court's order granting Comstock's motion for a non-suit. In *Radvan* the machine was determined to be an improvement to real property because it had been in place for more than 12 years, had never been moved, was bolted to the floor, connected to utilities and conduit piping for power, weighed dozens of tons, and would be difficult to dismantle. Comstock had provided engineering and installation services with respect to the machine and the court concluded that the statute of repose barred the suit against Comstock.

In the instant case, we find that the equipment, including the break-off arm, is permanent. Thus, it has the first earmark of a fixture and constitutes an improvement to the realty on this basis.

---

**6.** Respondent submits a letter from Consulting Engineers, Inc., which states the opinion, among others, that the equipment in this case is not a fixture because there exists "a thriving used machinery market, and further, that entire plants are sometimes dismantled, sold and shipped to be reassembled at another location." Claimant's Memorandum at Exhibit J. However, whether equipment constitutes an improvement to real estate is a question of law. *Bioni v. Canon–McMillan School District*, 521 Pa. 299, 555 A.2d 901 (1989). *See also Wilson v. Ridgeway Area School Dist.*, 141 Pa.Cmwlth. 617, 596 A.2d 1166, 1168 (1991), *allocatur denied*, 530 Pa. 650, 607 A.2d 258 (1992). Under the tests enunciated by the Supreme Court of Pennsylvania, the availability of a secondary market and the fact that virtually anything can be removed from a facility are not dispositive of the matter before us. According to the evidence of record, the business of the owner of this equipment after its installation was to operate a pipe mill, not to buy or sell used equipment.

### 2. *Extent to Which Equipment is Necessary to Use of Realty*

In the matter before us, the building itself was built or modified to specifications to accommodate the equipment. Without the equipment, the building is not useful for the purpose for which it was designed, i.e., to operate a pipe mill. Harold Wagner, at various times a draftsman, chief draftsman, and chief project engineer during his tenure with Bethlehem Steel, designed the building layout and the foundations for the equipment that is at issue. Wagner Declaration at ¶ ¶ 3, 5. In his declaration, Wagner stated that the design of the foundation was based on loads reflected in the design drawings of the "individual pieces of equipment prepared by the manufacturers" who are Debtor's subsidiaries. *Id.* at ¶ 7. The building was specifically designed to house the equipment. *Id.* at ¶ 4. The equipment is an integral part of the pipe mill. Sant Declaration at ¶ 17. If this equipment were to be removed, the building would not be useful for the purpose for which it was constructed. *Id.* at ¶ 17.

The break-off arm, which is the specific item under consideration, is an integral part of the equipment. The fact that the arm may be removed without damaging the real property is not controlling because the equipment cannot function as intended without it. The equipment, and break-off arm in particular, is necessary to the realty. The case of *Central Lithograph Co. v. Eatmor Chocolate Co.*, 316 Pa. 300, 175 A. 697 (1934), concerned whether machinery was part of the freehold for purposes of a mortgage holder's interest. The court stated that "all machinery in a manufacturing plant, necessary for its operation as a complete going concern, is part of the freehold". *Id.* at 698–99. In the matter at bar, without the break-off arm portion of the equipment, the system could not operate as intended. Therefore, the equipment is necessary to the realty and the second factor for concluding that it is a fixture is satisfied.

### 3. *Intent to Make Permanent Addition to Realty*

In *Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81 (1994), the Pennsylvania Supreme Court specified that the objective intent of the parties determines whether the personalty is a fixture, particularly where, as here, rights of third parties will be affected. *Id.* at 87–88. *See Canon–McMillan School Dist. v. Bioni*, 127 Pa. Cmwlth. 317, 561 A.2d 853, 854 (1989), *citing McCloskey v. Abington School Dist.*, 101 Pa. Cmwlth. 110, 515 A.2d 642, 644 (1986), *vacated on other grounds*, 517 Pa. 347, 537 A.2d 329 (1988) (intended use of property as manifested by conduct determines its status as realty). Objective intent is evidenced by the parties' conduct. *Noll* at 88.

In *Beaver v. Dansk Industri Syndicat A/S (DISA)*, 838 F.Supp. 206, 211 (E.D.Pa.1993), the court examined the parties' conduct and found that their intent was clear. The record in *Beaver* established that the equipment was integrated with other components and systems in the building, had never been moved in the twenty-five year operation of the plant, and added value to the plant. The court concluded that the equipment constituted an improvement to the real estate, even though affidavits stated that the parties intended the component part at issue (a molding machine in a foundry) to remain personalty and not to be incorporated into the realty.

In the case before us, the equipment is an integral part of the building, had been in place for more than 30 years at the time of the accident, and has never been moved. The welding and conveyor system is bolted to the floor. The break-off arm is connected to hydraulic and electrical power systems and is essential to the functioning of the welding and conveyor system. Although the break-off arm is removable, Deposition of John M. Sant at 94–95, Exhibit E to Claimant's Supplemental Submission to the Court, Docket Entry No. 515, there is no evidence of record to show that it ever was removed.

John Sant's declaration states that the welders, conveyors, and related equipment are all integral parts of the pipe mill which could not operate for its intended purpose without the equipment. Sant Declaration at ¶ 17. Under the facts of this case, even though the break-off arm could be unbolted and removed from the equipment in the pit in which it was housed, it is necessary for operation of the mill.

[W]e do not regard as solely controlling the damage which would be done by the removal of the machinery as that suffered by the building alone, but the damage that would ensue to the plant as a plant. As to that, from our reading of the record there can be no question that it would result in most material damage....

*Central Lithograph Co. v. Eatmor Chocolate Co.*, 316 Pa. 312, 175 A. 701, 702 (1934) (regarding removal of refrigeration machinery used to facilitate manufacture of all of the company's products).

In this case, the conduct of the parties is undisputed and from that conduct we conclude that the intention was to make the equipment part of the realty. *See Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81 (1994); *Canon–McMillan School Dist. v. Bioni*, 561 A.2d at 854. We find that all three factors are satisfied: the equipment is a permanent addition to the realty, it is necessary to the real estate, and the parties intended the equipment to be a permanent addition to the real estate. The test established in *Noll v. Harrisburg Area YMCA*, 537 Pa. 274, 643 A.2d 81 (1994), has been met and the equipment constitutes a fixture. We therefore conclude that the equipment is an improvement to real estate. Thus, in this respect, Respondent's claim falls within the ambit of the statute of repose and, unless an exception applies, the action is barred.

## II. *Is Debtor Within the Class Protected By the Statute of Repose?*

### A. *Debtor as Manufacturer*

■ Respondent asserts that because the statute of repose does not apply to manufacturers, Debtor is not protected inasmuch as Berkeley and Berkeley–Davis manufactured other seam welders. In this regard, Respondent contends that this particular equipment is not unique to Debtor. Whether the equipment is unique is contested,[7] but this is not material and we need not resolve the question. For purposes of this opinion, we assume without deciding that the equipment

was not unique and conclude that Debtor remains within the protection of the statute of repose. Companies may design and manufacture similar, or even identical, products and still remain within the purview of the statute.

In *Mitchell v. United Elevator Company, Inc.*, 290 Pa.Super. 476, 434 A.2d 1243 (1981), elevators were determined to be improvements to real estate notwithstanding their uniformity from building to building. Like the elevators, the fact that the equipment in the instant case is not unique does not negate its status as an improvement to realty. In *Mitchell*, the court was influenced by the definition of the term "improvement" found in Black's Law Dictionary:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intending to enhance its value, beauty or utility or to adapt it for new or further purposes.

434 A.2d at 1249 *citing* BLACK'S LAW DICTIONARY at 682 (5th Ed.1979). *See also Noll v. Harrisburg Area Builders, Inc.*, 537 Pa. 274, 643 A.2d 81 (1994). The record before us is clear that the equipment involved in this case was intended to, and did, enhance the utility of the property. The equipment was designed with the specific purpose of incorporation into this pipe mill, which itself was designed to accommodate the equipment.

Furthermore, Debtor did not merely manufacture the equipment or the mill but designed them as well. The statute of repose specifically exonerates entities that "perform[ ] or furnish[ ] the design, planning, supervision or observation of construction or construction of any improvement to real property" after 12 years from completion of the improvement. 42 Pa.Cons.Stat.Ann. § 5536(a). Sant examined the Steelton Plant and the blueprints relating to the equipment and concluded that different portions of the equipment were designed and manufactured

---

7. In his declaration, Harold Wagner stated that the type of pipe mill line involved in this case may never have been used before or since. Wagner Declaration at ¶ 6. John Sant stated that, although Debtor's subsidiaries manufactured other welders using some of the same concepts involved in the design of the Steelton Plant equipment, the equipment involved in this case is unique. Sant Declaration at ¶ 12.

by Berkeley and Berkeley–Davis. Sant Declaration at ¶¶ 1–6. He indicated that Berkeley had prepared "a sales proposal drawing showing a complete 'welding department' for the Pipe Mill line" for Bethlehem. *Id.* at ¶ 7. Berkeley also designed, *inter alia,* the entrance conveyors and inside welders. *Id.* at ¶ 6. Sant declared that the type of equipment at issue had to be specifically designed and custom made according to the express needs of Bethlehem Steel for the Steelton plant. *Id.* at ¶¶ 11, 12. It was not mass-produced equipment but "had to be specifically designed in accordance with the expressed needs of the customer and custom made for that specific application." *Id.* at ¶ 11. Even though similar or identical equipment may be in use in other mills and may have been manufactured by Debtor, the equipment is an improvement to the realty for the reasons stated.

In support of her contention that Debtor is only a manufacturer and, therefore, not protected by the statute of repose, Respondent likens the instant case to *Ferricks v. Ryan Homes, Inc.,* 396 Pa.Super. 132, 578 A.2d 441 (1990), *allocatur denied,* 527 Pa. 617, 590 A.2d 757, 758 (1991). In *Ferricks,* the court found that manufacturers of plywood board used in construction of a house were not entitled to the protection of § 5536. The court noted that "[a] multipurpose building material . . . which is merely used as a component in the creation of a finished product, does not come within the definition of the term 'improvement'." 578 A.2d at 444. The plywood was "only part[ ] of what may become a fixture; [it is] not the fixture. It is only the finished product with its singular purpose of being integrated into a structure which constitutes the fixture." *Id.* The manufacturer in *Ferricks* was not protected by the statute because it did nothing more than "supply a standard piece of equipment, indistinguishable from any other it mass-produced, that by chance became affixed to the . . . property." *Id., quoting McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907, 910 (1989). In this case, the break-off arm is essential to operation of the welding and conveyor system and, thus, to operation of the plant as a whole, and was not

affixed by happenstance but by design and necessity.

Respondent also cites *Luzadder v. Despatch Oven Co.,* 834 F.2d 355 (3d Cir.1987), *cert. denied sub nom. Honeywell, Inc. v. Luzadder,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988). *Luzadder* was an action arising from an injury incurred when a natural gas furnace exploded. The Court of Appeals determined that if the issue were to come before the Pennsylvania Supreme Court, that court would conclude that a manufacturer is not protected by the statute, even when the manufacturer's product has been incorporated into construction. Since then, the Pennsylvania Supreme Court decided *McConnaughey v. Building Components, Inc.,* 536 Pa. 95, 637 A.2d 1331 (1994), and *Noll v. Harrisburg Area Builders, Inc.,* 537 Pa. 274, 643 A.2d 81 (1994).

In *McConnaughey,* appellants had purchased pre-constructed roof trusses from a manufacturer. The manufacturer maintained a supply of the trusses for sale to the public. Appellants used the trusses in construction of a barn. More than 12 years after appellants purchased and installed the trusses, the roof collapsed. The state supreme court rejected the manufacturer's claim that the statute of repose applied to bar the suit against it. The court said:

> The fact that a manufacturer designs and plans the component products which later are incorporated into an improvement to real property is irrelevant under the statute. The Pennsylvania statute of repose was not intended to apply to manufacturers and suppliers of products, but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by builders.

637 A.2d at 1334. In *Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 643 A.2d 81, (1994), the Pennsylvania Supreme Court clarified that the focus of inquiry is on the activity performed, especially whether any "individual expertise" was employed. *Id.* at 643 A.2d at 87. In *Noll* the court found that the

manufacturer defendant had provided such expertise in the design of the improvement.[8]

In this case Debtor's subsidiaries were not merely manufacturers supplying a standard piece of equipment, *McCormick v. Columbus Conveyer Co.*, 564 A.2d at 910, or a product which had a "singular purpose of being integrated into a structure which constitutes the fixture." *Ferricks v. Ryan Homes, Inc.*, 578 A.2d at 444. The pleadings, briefs, and affidavits on file establish that Debtor designed the equipment and the break-off arm through engineers in its employ. The equipment and the break-off arm are part and parcel of the mill and essential to its operation and without them the realty could not serve its intended purpose. The fact that Debtor also manufactured the equipment does not remove Debtor from the class that the statute of repose protects. As the designer, Debtor engaged in the type of conduct that the statute was intended to protect.

### B. *Failure to Warn*

Respondent also contends that this is a failure to warn case to which the statute of repose does not apply. Although the usual procedure of effecting a shut-down at the main control panel had been followed before Mr. Lawrence entered the pit to commence repairs, this procedure did not result in cutting power to the hydraulic pumping system that operates the break-off arm. Because the deactivation switch was about 30 feet from the accident site, in the time it took an employee to traverse the area to the controls, Mr. Lawrence was killed. Deposition of Donald J. Slagle at 13, Exhibit G to Claimant[ ] Christine Lawrence's Response to Objection of Barto Technical Services, Inc. to Claim of Christine Lawrence. Under these conditions, when the break-off arm began to rise, there was no way someone at the point where the break-off arm is housed could immediately deactivate or retract the arm. In the time another employee spent travers-

ing the 30 feet to the controls, the injury to Mr. Lawrence was complete and fatal.

Respondent argues that there should have been a posted warning of the danger associated with the equipment explaining that power to the break-off arm was not eliminated by turning the machine off at the control panel. Respondent contends that because there was no warning that power to the break-off arm was not eliminated by turning the machine off at the control panel and because "the statute [of repose] does not abolish or eliminate recovery for a manufacturer's failure to warn of the risks and dangers associated with the use of its product either under negligence or strict liability theories", her claim must be allowed. Claimant's Memorandum at 10. We disagree. The District Court for the Eastern District of Pennsylvania has stated that failure to warn claims fall within the purview of § 5536.

> The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive. *Leach v. Philadelphia Sav. Fund Soc.*, 340 A.2d at 493.[9] Essentially, the statute of repose eliminates *all* causes of action, including both theories of negligence and strict liability, arising out of the construction or design of an improvement in real property which occurred more than 12 years before the accident. [Citations omitted.] ...

*Beaver v. Dansk Industri Syndicat A.S (DISA)*, 838 F.Supp. 206, 215 n. 4 (E.D.Pa. 1993) (emphasis in original). *See also Gnall v. Illinois Water Treatment Co.*, 640 F.Supp. 815, 820 (M.D.Pa.1986). All the components of Respondent's claim, including the failure to warn aspect, arise from an alleged deficiency in the design of the improvement to the realty. Thus, the failure to warn claim is barred by the statute of repose.

---

**8.** The court ultimately held that the trial court had not abused its discretion when finding that the diving blocks at issue in that case did not constitute an "improvement to real property".

**9.** *Leach v. Philadelphia Sav. Fund Soc.*, 234 Pa.Super. 486, 340 A.2d 491 (1975). Although the court in *Leach* addressed specifically that portion of § 5536 that spoke to the class of

persons or entities protected, the court also made general reference to the meaning of the word "any". Regardless, the court in *Beaver* applied the teaching of *Leach* to the term "any deficiency" and we are in accord with the reasoning in *Beaver*. *See also Gnall v. Illinois Water Treatment Co.*, 640 F.Supp. 815 (M.D.Pa.1986).

### III. *Summary*

We conclude that the statute of repose bars Respondent's claim. Debtor's subsidiaries designed the equipment which constitutes an improvement to realty. The break-off arm is an integral part of and is necessary to the functioning of the equipment. Without the equipment, the building in which it is housed would not be fit for the purpose for which it was designed and constructed. Because there is no cause of action against Debtor's subsidiaries, there can be none against Debtor.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **27th** day of **April, 1995,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED** that Debtor's objection to the claim of Christine Lawrence is **SUSTAINED.**